

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLOYD SHEPHERD,                )
           Plaintiff,       )
                    )
                    )
          v.              )   Case No. 08-cv-622
                    )
HOMECOMINGS FINANCIAL (GMAC))   Judge Gottschal
           Defendants.      )   Magistrate Judge Brown

## PLAINTIFFS SECOND MEMORANDUM TO SQUASH SUMMARY JUDGEMENT FAVORING DEFENDANT

To: Douglas R. Sargent
    Locke Lord Bissell & Liddell LLP
    111 South Wacker Drive
    Chicago, IL. 60606-4410
    Telephone: 312-443-0462
    Facsimile: 312-896-6471

On several occasions defendant mentions that homecomings, LLC was incorrectly sued as homecomings, GMAC. Plaintiff sent complaint, summons, mechanics lien, Affidavit of Demand for verified complaint, proof of jurisdiction and special appearance to waterloo, IA by a process Service Company. Charles Hoecker, senior vice president signed for these documents. These documents had plaintiffs account number on them.

Back on October 24th, 2007 homecomings, LLC replied to a request for validation of debt that plaintiff sent to them. This will be <u>Exhibit 1</u>, dated October 24th, 2007. Homecomings, LLC replied in good faint but never verified the debt. Homecomings, LLC sent a cover letter and a copy of the contract and a break down of all payments sent to them to supposedly to prove their claim. My point is that Homecomings, LLC responded to plaintiff even though my documents to them stated Homecomings, GMAC. It is quite evident that Homecomings Financial is a part of GMAC, its all over there documents and website. Since Homecomings financial responded by sending a copy of the contract then the contract is in question. Since Homecomings Financial, LLC are saying that they own the loan by this contract then the original note is in question.

On several occasions Homecomings Financial, LLC sent me a bill stating that they are a debt collector. First notice was sent 12/10/2007, second notice was sent 1/9/2008 and the third notice was sent 2/9/2008. It is quite clear that Homecomings Financial, LLC was attempting to collect. All these documents will be consider <u>Exhibit 2</u>.

1

<u>Hearsay Evidence</u>: According to blacks law dictionary 4th edition page 852, hearsay evidence is evidence not from personal knowledge. Nature of the evidence is weakness. This will be <u>Exhibit 3</u>.

<u>http://www.merriam-webster.com/dictionary/hearsay+evidence</u>
Hear say evidence according to Merriam Webster is as follows:
<u>:  evidence based not on a witness's personal knowledge but on another's statement not made under oath</u>.

Blacks law diction 4th edition page 490 states that a debt is a sum of money by express agreement, as by bond, bill or note. This will be <u>Exhibit 4</u>. On page 491 in blacks law 4th edition it also states a <u>Contractual Obligation. Page 490 and 491 are Exhibit 4</u>.

Attorneys are not allowed to testify:
Trinsey v. Paeliaro. D.C. Pa. 1964. 229 F. Supp. 647

Homecomings financial, LLC is has an obligation to me to prove ownership of the alleged loan. In good faith, defendant must reply to my recent request of Request for productions, Request for admissions and Interrogatories under oath.

The attorney for the defendant does not have first hand knowledge of the facts and cannot testify unless under oath, documents must be signed under penalty of perjury by declaration. Everything stated by the attorney is hearsay and cannot be admitted as evidence. Homecomings Financial, LLC must take the stand to be cross-examined.

The attorneys for the defendant have been answering to date, plaintiff issues, even though is statements are considered <u>hearsay evidence</u>.

Since the attorneys have been answering plaintiff thus far, even though is has not been under oath, I am sure the attorneys for the defendant will have plaintiff's discovery answered in good faith. For the court to enter a summary judgment favoring defendant while discovery is in progress will be against due process. Discovery should prove if the Plaintiff or Defendant has been injured. Since Defendant is trying to dismiss the complaint pursuant to 12 (b)(6), it is evident that more evidence is needed to support plaintiff's complaint.

See the U. S. Constitution: Fifth Amendment and U. S. Constitution Sixth Amendment for due process violations and for the right to confront witnesses.

See the Constitution of the State of Illinois, Article 1, and Bill Of Rights. Section 2-Due Process and Equal Protection and Section 6-Searches, Seizures, Privacy and Interceptions.

<u>CONTRACTS</u>

According to the UCC-  § 2-106
(4) "Cancellation" occurs when either party puts an end to the <u>contract</u> for breach by the

other and its effect is the same as that of "termination" except that the canceling party also retains any remedy for breach of the whole contract or any unperformed balance .

## VOID JUDGMENTS

**Black's Law Dictionary, Sixth Edition, page 1574**
**Void judgment.** One which has no legal force or effect, invalidity of which may be asserted by any person whose rights are affected at any time and at any place directly or collaterally. Reynolds v. Volunteer State Life Ins. Co., Tex.Civ.App., 80 S.W.2d 1087, 1092. One which from its inception is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. Judgment is a "void judgment" if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process. Klugh v. U.S., D.C.S.C., 610 F.Supp. 892, 901. See also Voidable judgment.

A void judgment, which includes judgment, entered by a court, which lacks jurisdiction over the parties or the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court. See Long v. Shorebank Development Corp., 182 F.3d 548 (C.A. 7 Ill. 1999)

Void judgment is one that, from its inception, is complete nullity and without legal effect. Holstein v. City of Chicago, 803 F.Supp. 205, reconsideration denied 149 F.R.D. 147, affirmed 29 F.3d 1145 (N.D. Ill. 1992).

Under Federal Rules of Evidence – Rule 1002, original documents are required.

Enclosed:
Plaintiff's second memorandum, 4 Pages.  (This memorandum)
<u>Exhibit 1</u> dated 10/24/2007 16 Pages.
<u>Exhibit 2</u> Homecomings Financial, LLC attempt to collect a debt dated 12/10/2007, 1/9/2008 and 2/8/2008-5Pages.
<u>Exhibit 3</u> Blacks law dictionary 4th edition hearsay-1 page.
<u>Exhibit 4</u> Blacks law dictionary 4th edition on debt. 2 Pages
<u>Exhibit 5</u> Mechanics lien-Doc# 0702439107-2 Pages (Filed in the recorders of Deeds)
<u>Exhibit 6</u> Mechanics lien-Doc# 0803010070-2 Pages (Filed in the recorders of Deeds)
Plaintiff's first set of Interrogatories
Plaintiff's request for productions ⟶ Not Filed in Court F.S.
Plaintiff's request for admissions
Plaintiff' Motion to strike
Plaintiff' Notice of Motion
Notification of docket entry
Certificate of Service (C.F.S.)

3

*Certificate Of Service*

I certify that a copy of the foregoing was mailed to Douglas R. Sargent, overnight express #EH 129457568 US, of Lock, Lord Bissell and Liddell, LLP, 111 South Wacker Drive, Chicago Illinois 60606. On this 6th, day of May 2008.

Floyd Shepherd,
8119 S. Artesian St.
Chicago, Illinois 60652
773-590-1873

# Homecomings Financial

*A GMAC Company*

PO BOX 205
Waterloo, IA 50704-0205

October 24, 2007

Renee K Shepherd
Floyd Shepherd
8119 S Artesian
Chicago IL  60652

RE:    Account Number        7440273993
       Property Address      8119 S Artesian
                             Chicago IL  60652

Dear Renee K Shepherd and Floyd Shepherd:

This letter is in response to your recent letter concerning the Validation of Debt on the above-referenced account.

A copy of the loan documents and a payment history confirming Validation of Debt reported to the four major credit reporting agencies is enclosed.  Homecomings Financial is unable to comply with your request to make changes to your credit file based on the information you have provided.  Homecomings Financial makes every effort to report true and accurate information to the bureaus.

After reviewing the enclosed documents and you still consider yourself not financially obligated for the above-referenced account, please provide the specific reason(s) you believe you are not liable, along with any appropriate documents to support your assertion.  Your letter and documents will be reviewed upon receipt, and a response sent.

If you have any further questions, please contact Customer Care at 1-800-206-2901.

Customer Care
Loan Servicing

Enclosures

TN/BW

# ADJUSTABLE RATE NOTE

### (LIBOR Index - Rate Caps)

MIN 100052300421123422

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| 09/16/05 | IRVINE | CA |
|---|---|---|
| [Date] | [City] | [State] |

8119 S ARTESIAN, CHICAGO, IL 60652
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 152,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
Finance America, LLC
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.855 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on NOVEMBER 01, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on OCTOBER 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at OCWEN Loan Servicing LLC
P.O. Box 785056, Orlando, FL 32878-5056
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 996.51 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family • Freddie Mac UNIFORM INSTRUMENT          Form 3590 1/01

VMP-815N (0005).01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4          Initials _B.J./F.S._

MDAC

LOAN ID: 0042112342



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of      OCTOBER  01, 2007    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding     FIVE  AND        NO/100            percentage points (       5.000         %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        9.855      % or less than     6.855    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than     12.855       %.   My interest rate will never be lower than the initial interest rate stated in Paragraph 2 of this Note.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

-815N (0006).01

Page 3 of 4

Form 3590 1/01
Initials:

MDAS

LOAN ID: 0042112342

 

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RENEE K. SHEPHERD            -Borrower

_____ (Seal)
FLOYD SHEPARD               -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

*[Sign Original Only]*

-815N (0005).01

Page 4 of 4

Form 3590 1/01

MEAA

LOAN ID: 0042112342



Finance America, LLC
16802 Aston Street
Irvine, CA 92606

# ALLONGE

Loan number:    0042112342 _____

Borrower name:    RENEE K. SHEPHERD AND FLOYD SHEPARD _____

Pay to the order of _____
Without recourse    Finance America, LLC _____

_(signature)_

.. .ral Management Supervisor

_____
AUTHORIZED OFFICER

-1196143 (9908)          ELECTRONIC LASER FORMS, INC. - (800)327-0545          May 1999

ARDD                                      LOAN ID:0042112342

RETURN RECORDED DOC TO:
Finance America, LLC
P.O. Box 16637
Irvine, Ca 92623-6637

MIN  100052300421123422

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    16th   day of SEPTEMBER  , 2005   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Finance America, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

8119 S ARTESIAN, CHICAGO, IL 60652
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    6.855        %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of   OCTOBER  01,  2007    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP-815R (0008)         Form 3192 1/01
Page 1 of 4              Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

MGMW

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND NO/100                    percentage points (          5.000          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.855 % or less than      6.855      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.855 %.    My interest rate will never be lower than the initial interest rate stated in Paragraph A of this Rider.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials: _E.J.B._

-815R (0008)                    Page 2 of 4                    Form 3192 1/01

MGMX

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



-815R (0008) Page 3 of 4 Initials: _____ Form 3192 1/01

MGMY

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
RENEE K. SHEPHERD              -Borrower          FLOYD SHEBARD                -Borrower
                                                  Herd F.S.

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                       -Borrower

-815R (0008)                          Page 4 of 4                          Form 3192 1/01

MGMZ

RECORDING REQUESTED BY:

Finance America, LLC
PO Box 16637
Irvine, CA 92623-6637

---

SPACE ABOVE THIS LINE FOR RECORDING DATA

MIN #100052300421123422

## PREPAYMENT RIDER

DATE:  __09/16/05__

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into that certain Mortgage, Deed of Trust, or Security Deed of even date herewith (the "Security Instrument") executed by Borrower in favor of
           Finance America, LLC                  (the "Lender"), and also into that certain promissory note (the "Note") of even date herewith executed by Borrower in favor of Lender. To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Prepayment Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

Section __5__ of the Note is amended to read in its entirety as follows:

" 5    BORROWER'S PREPAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due, together with accrued interest. When I make a prepayment, I will tell the Note Holder in writing that I am doing so. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes. If within    ONE    years from the date of execution of the Mortgage (as defined above) I make a full prepayment or partial prepayment(s), I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to three percent (3%) of the unpaid principal balance if prepaid during the first year; xxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

IN WITNESS WHEREOF, the Borrower has executed this Prepayment Rider on the __16th__ day of
__September__, 200_5_

_____    _____
Borrower    RENEE K. SHEPHERD    Borrower    FLOYD SHEPHERD
                                                              FCQ F.S.

_____    _____
Borrower    Borrower

_____    _____ ILLINOIS
FIRST MORTGAGE

9/16/05 10:20 AM

| A. U.S. Department of Housing and Urban Development | B. Type of Loan |
|---|---|
| | 1. [ ] FHA  2. [ ] FMHA  3. [ ] Conv. Unins. |
| | 4. [ ] VA  5. [ ] Conv. Ins.  [X] Other. |
| | 6. File Number  7. Loan Number |
| | 448798  0042112342 |
| **Settlement Statement** | 8. Mortgage Ins. Case No. |

OMB No. 2502-0265

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. Name of Borrower:** Renee K Shepherd
Floyd Shepherd

**E. Name of Seller:**

**F. Name of Lender:** Finance America, LLC, 16802 Aston Street, Irvine, CA 92606

**G. Property Location:** 8116 South Artesian, Chicago, IL 60652

**H. Settlement Agent:** Savannah Title Company    TIN:
**Place of Settlement:** 900 Jorie Boulevard Suite 192 Oakbrook II 60523

**I. Settlement Date:** 9/16/2005    **Proration Date:** 9/21/2005

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,667.33 | 403. | |
| 104. Payoff-Chase | 136,279.85 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 141,947.18 | 420. Gross amount due to seller: | 0.00 |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reduction in amount due to seller: | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 152,000.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower | 152,000.00 | 520. Total reduction in amount due seller | 0.00 |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 141,947.18 | 601. Gross amount due to seller (line 420) | 0.00 |
| 302. Less amount paid by/for borrower (line 220) | 152,000.00 | 602. Less total reduction in amount due seller (line 520) | 0.00 |
| 303. CASH ( )FROM (X)TO BORROWER | 10,052.82 | 603. CASH (FROM (TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.
SELLER INSTRUCTION - If this real estate was your principle residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Savannah Title Company with your correct taxpayer identification number.
If you do not provide Savannah Title Company with your correct taxpayer identification number, you may ...

HUD USED FOR FINANCE AMERICA
FUNDING PURPOSES.

F.A. FUNDER: Kyle Nichols

DATE: 9/20/05

FAX NO: SENT TO:
030-706-6990

| L. Settlement Charges | | File Number: 446766 | | |
|---|---|---|---|---|
| 700. | Total sales/broker commission | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
| | Division of commission (line 700) as follows: | | | |
| 701. | $ | | | |
| 702. | $ | | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| 800. | Items payable in connection with loan | | | |
| 801. | Loan origination fee | | | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee | to Active Appraisals Plus | 275.00 | |
| 804. | Credit report | to Enterprise Mortgage Corporation | 25.00 | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee | | | |
| 807. | Assumption fee | | | |
| 808. | Yield Spread Premium | to Enterprise Mortgage Corporation   POCL 1140.00 | | |
| 809. | Broker Fee | to Enterprise Mortgage Corporation | 1,900.00 | |
| 810. | Processing Fee | to Enterprise Mortgage Corporation | 400.00 | |
| 811. | Courier Fee | to Enterprise Mortgage Corporation | 20.00 | |
| 812. | Lender Fee | to Finance America, LLC | 325.00 | |
| 813. | Flood Cert Fee | to Finance America, LLC | 27.00 | |
| 814. | Tax Service Fee | to Finance America, LLO | 62.00 | |
| 815. | | | | |
| 816. | | | | |
| 817. | | | | |
| 818. | | | | |
| 819. | | | | |
| 820. | | | | |
| 821. | | | | |
| 900. | Items required by lender to be paid in advance | | | |
| 901. | Interest from  9/21/2005 to 10/1/2005  at $28.9400/day for 10 days. | | 289.40 | |
| 902. | Mortgage insurance premium for | | | |
| 903. | Hazard insurance premium for | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | Reserves deposited with lender | | | |
| 1001. | Hazard insurance | | | |
| 1002. | Mortgage insurance | | | |
| 1003. | City property taxes | | | |
| 1004. | County property taxes | | | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. | | | | |
| 1009. | | | | |
| 1100. | Title charges | | | |
| 1101. | Settlement or closing fee | to Savannah Title Company | 265.00 | |
| 1102. | Abstract or title search | | | |
| 1103. | Title examination | | | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation | | | |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to | | | |
| | Includes above items no.: | | | |
| 1108. | Title insurance | to Savannah Title Company | 645.00 | |
| | Includes above items no.: | | | |
| 1109. | Lender's coverage | $152,000.00 | $645.00 | |
| 1110. | Owner's coverage | | | |
| 1111. | EPA-Comp-ARM-Loc Note | to Savannah Title Company | 297.00 | |
| 1112. | 12 Month Chain of Title | to Stewart Title of Illinois | 100.00 | |
| 1113. | Illinois Statutory Policy Fee | to Stewart Title of Illinois | 3.00 | |
| 1200. | Government recording and transfer charges | | | |
| 1201. | Recording fees: | Mortgage $82.00  Release $37.00 | 99.00 | |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps: | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1206. | | | | |
| 1300. | Additional settlement charges | | | |
| 1301. | Survey | | | |
| 1302. | Pest inspection | | | |
| 1303. | TI-2004 2nd Inst tax | to STCI TI Acct | 1,042.93 | |
| 1304. | | | | |
| 1305. | | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | 5,567.33 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Payment History Code Key

| Subject Type | Explanation |
|---|---|
| Column Headings | Reading from left to right:<br>• Post Date = the date the transaction was completed.<br>• TRN Code= transaction codes (see table)<br>• Due Date= the date interest is due from as of that posting<br>• Transaction Amount = the dollar amount for that particular posting<br>• Principal Paid= the amount of funds affecting the principal balance.<br>• Interest Paid= the amount of funds affecting the interest payment<br>• Escrow Paid= the amount of funds affecting the escrow balance |
| Escrow Codes | • M90 or E90= county tax payment<br>• M91 or E91= City tax payment<br>**Note: any escrow transaction starting with a 9 is a tax related disbursement.**<br>• EI= interest on escrow<br>• M20 or E20= hazard insurance payment<br>• M21 or E21= flood insurance payment<br>**Note: any escrow transaction starting with a 2 is an insurance related disbursement.**<br>• R20= Insurance Refund<br>• R90/R91= Tax Refund<br>• E01/ M01 or M00/E00= escrow refund to customer<br>**Note: any transaction starting with a 4 is for Private Mortgage Insurance** |

| Payment Codes | Payment TRN Description |
|---|---|
| AA | Administrative Adjustment (late charge waiver- fee adjustments etc) |
| AP | Payment Application |
| ADR | Advance Reversal<br>For Home Equity Line of Credit loans, this transaction type represents the reversal of an advance on the line |
| ADV | Advance. For Home Equity Line of Credit loans, this transaction type represents an advance that the borrower takes on the line |
| ASP | Autopost Short Payment |
| ATP | Autopost Total Payment |
| APP | Acceptable Partial Payment |
| AND | Funding Advance on Home Equity Line of Credit |
| AAP | Automated Acceptable Payment |
| AMC | Adjustable Rate, P & I Subsidy, Term Changes |
| CT | Curtailment/ Additional Principal |
| CTA | Curtailment/Additional Principal Reversal |
| FB | Fee Billed |
| FE, FEA OR PWA | Fee Paid |
| GP | Government Payment |
| PA | Payment posted manually |
| POST | Post petition payment |
| PP | Partial Payment |
| PRE | Petition payment |
| PRN | Payment reversal ('N' = reason code) |
| PT | Reapplication of payment due to an investor transfer |
| RP | Regular payment |
| RT | Payment reversal due to an investor transfer |
| SHP | Short Payment |
| SR | Single item receipt commonly applied to escrow, uncollected late charges, closing interest, buydown funds, uncollected credit insurance, or unapplied funds |
| SRA | Single receipt posted |
| SRN | Reversal |
| UFN | Unapplied funds transaction ('N' = unapplied funds code after the transaction) |
| UI | Uncollected items including interest, credit insurance, and late charges |
| UIE | Uncollected late charges collected from the escrow overage during analysis |
| ITR | Investor transfer |

```
Homecomings Financial, LLC                          PAGE       1
P.O. Box 205                                        DATE 10/24/07


Waterloo            IA 50704        .
                                    HISTORY FOR ACCOUNT 7440273993


     --------- MAIL -------------------- --------- PROPERTY ----------------


     RENEE K SHEPHERD
     FLOYD SHEPHERD
     8119 S ARTESIAN                     8119 S ARTESIAN


     CHICAGO            IL 60652    CHICAGO            IL 60652

------ DATES ------  ---- CURRENT BALANCES -----  ------- UNCOLLECTED -------
PAID TO    10/01/07  PRINCIPAL      148709.60  LATE CHARGES        -49.33
NEXT DUE   11/01/07  ESCROW             0.00   OPTIONAL INS          0.00
LAST PMT   10/20/07  UNAPPLIED FUND      0.00   INTEREST             0.00
AUDIT DT   10/31/05  UNAPPLIED CODES           FEES                 0.00
                     BUYDOWN   FUND     0.00   ------ YEAR TO DATE -------
   LAST ACTIVITY     BUYDOWN   CODE            INTEREST          8540.28
      10/22/07                                 TAXES                0.00
------------------------------------------------------------------------
```

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|-----------|---------|----------|--------------------|----------------|---------------|-------------|
| 112805 | RP | 110105 | 996.51 | 128.21 | 868.30 | .00 |
| 120605 | RP | 120105 | 996.51 | 128.94 | 867.57 | .00 |
| 011306 | RP | 010106 | 996.51 | 129.68 | 866.83 | .00 |
| 021006 | RP | 020106 | 996.51 | 130.42 | 866.09 | .00 |
| 031006 | RP | 030106 | 996.51 | 131.16 | 865.35 | .00 |
| 041706 | RP | 040106 | 996.51 | 131.91 | 864.60 | .00 |
| 041706 | FE | 040106 | 8.99 171 SPEEDPAY | | | |
| 051706 | RP | 050106 | 996.51 | 132.67 | 863.84 | .00 |
| 051706 | FE | 050106 | 8.99 171 SPEEDPAY | | | |
| 061306 | RP | 060106 | 996.51 | 133.43 | 863.08 | .00 |
| 061306 | FE | 060106 | 8.99 171 SPEEDPAY | | | |
| 071406 | RP | 070106 | 996.51 | 134.19 | 862.32 | .00 |
| 080906 | RP | 080106 | 996.51 | 134.95 | 861.56 | .00 |
| 090806 | RP | 090106 | 996.51 | 135.73 | 860.78 | .00 |
| 101606 | RP | 100106 | 996.51 | 136.50 | 860.01 | .00 |
| 111506 | RP | 110106 | 996.51 | 137.28 | 859.23 | .00 |
| 121306 | RP | 120106 | 996.51 | 138.06 | 858.45 | .00 |
| 011607 | RP | 010107 | 996.51 | 138.85 | 857.66 | .00 |
| 021207 | RP | 020107 | 996.51 | 139.65 | 856.86 | .00 |
| 031207 | RP | 030107 | 996.51 | 140.44 | 856.07 | .00 |
| 041207 | RP | 040107 | 996.51 | 141.25 | 855.26 | .00 |
| 051407 | RP | 050107 | 996.51 | 142.05 | 854.46 | .00 |
| 051407 | CWP | 050107 | .49 | .49 | .00 | .00 |
| 061407 | AP | 060107 | 996.51 | 142.87 | 853.64 | .00 |
| 061407 | CWA | 060107 | .49 | .49 | .00 | .00 |
| 071607 | AP | 070107 | 996.51 | 143.69 | 852.82 | .00 |
| 071607 | CWA | 070107 | .49 | .49 | .00 | .00 |

```
   INQ 1419
```

```
HISTORY FOR ACCOUNT  7440273993                          PAGE      2
                                                         DATE 10/24/07


        --------- MAIL --------------------- --------- PROPERTY ----------------

        RENEE K SHEPHERD
        FLOYD SHEPHERD
        8119 S ARTESIAN                      8119 S ARTESIAN


        CHICAGO             IL 60652    CHICAGO              IL 60652
```

| POST<br>DATE | TRN<br>CDE | DUE<br>DATE | TRANSACTION<br>AMOUNT | PRINCIPAL<br>PAID | INTEREST<br>PAID | ESCROW<br>PAID |
|---|---|---|---|---|---|---|
| 081407 | UFU | 070107 | UNAPPLIED FUNDS (1) | | 200.00 BALANCE | 200.00 |
| 081407 | SRA | 070107 | 200.00 | .00 | .00 | .00 |
| 081407 | UFU | 080107 | UNAPPLIED FUNDS (1) | | -200.00 BALANCE | 0.00 |
| 081407 | AP | 080107 | 796.51 | 144.51 | 852.00 | .00 |
| 081407 | CWA | 080107 | .49 | .49 | .00 | .00 |
| 091107 | UFU | 080107 | UNAPPLIED FUNDS (1) | | 697.00 BALANCE | 697.00 |
| 091107 | SRA | 080107 | 697.00 | .00 | .00 | .00 |
| 091107 | UFU | 090107 | UNAPPLIED FUNDS (1) | | -697.00 BALANCE | 0.00 |
| 091107 | AP | 090107 | 299.51 | 145.34 | 851.17 | .00 |
| 091107 | CWA | 090107 | .49 | .49 | .00 | .00 |
| 102207 | UI | 100107 | .00 | .00 | .00 | .00 |

```
                OPT PREMIUMS          .00 LATE CHARGE PYMT   -49.33*
102207 AMC 100107  INTEREST RATE CHG OLD   6.85500   NEW   9.85500
102207 AP  100107      997.00    146.17      850.34        .00
                OPT PREMIUMS          .00 LATE CHARGE PYMT    .49



   END OF HISTORY

      INQ 1419
```

**Homecomings Financial**
A GMAC Company
PO Box 205
Waterloo, IA 50704-0205

12/10/07

RENEE K SHEPHERD
FLOYD SHEPHERD
8119 S ARTESIAN

CHICAGO                    IL 60652


RE:    Account Number    7440273993
       Property Address  8119 S ARTESIAN

                         CHICAGO IL 60652

Dear RENEE K SHEPHERD
     FLOYD SHEPHERD

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 11/01/07, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

| | | |
|---|---|---:|
| Payments | $ | 2609.70 |
| Late Charges | $ | 114.57 |
| Fees, Costs, and other amounts accrued to date | $ | |
| Suspense | $ | 37.50 |
| Total Amount Due | $ | 0.00 |
| | | 2761.77 |

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter.  You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period.  Payments must be made in certified funds or cashier's
check.  If funds tendered are not honored for any reason, the
default will not be cured.  Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.

(continued on back)

12/10/07
Account Number  7440273993
Page Two

You are hereby notified your credit rating may be adversely affected if you fail to fulfill the terms of your credit obligations. You are also notified we may visit the above-referenced property from time to time to determine its condition and occupancy status, the costs of which you will be responsible for.

Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings. This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your account up to five days prior to the foreclosure sale of the property if: 1) you pay the total amount due plus any fees, costs and other amounts accrued through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property, as well as your obligations under the loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by calling 800-569-4287. If you would like to discuss any matter contained in this notice, we encourage you to contact our loan counselors immediately at 800-799-9250.


Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information obtained will be used for that purpose. If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

5020

**Homecomings Financial**

A GMAC Company
PO Box 205
Waterloo. IA 50704-0205

01/09/08

RENEE K SHEPHERD
FLOYD SHEPHERD
8119 S ARTESIAN

CHICAGO                IL 60652

RE:  Account Number     7440273993
     Property Address   8119 S ARTESIAN

                        CHICAGO IL 60652

Dear RENEE K SHEPHERD
     FLOYD SHEPHERD

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 12/01/07, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

| | |
|---|---:|
| Payments ................................ $ | 2832.79 |
| Late Charges ........................... $ | 179.81 |
| Fees, Costs, and other amounts accrued | |
|   to date ............................ $ | 48.75 |
| Suspense ............................... $ | 0.00 |
| Total Amount Due ....................... $ | 3061.35 |

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter.   You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period.  Payments must be made in certified funds or cashier's
check.  If funds tendered are not honored for any reason, the
default will not be cured.  Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.

                                        (continued on back)

01/09/08
Account Number   7440273993
Page Two

You are hereby notified your credit rating may be adversely affected if you fail to fulfill the terms of your credit obligations.  You are also notified we may visit the above-referenced property from time to time to determine its condition and occupancy status, the costs of which you will be responsible for.

Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings.  This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your account up to five days prior to the foreclosure sale of the property if: 1) you pay the total amount due plus any fees, costs and other amounts accrued through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property, as well as your obligations under the loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by calling 800-569-4287.  If you would like to discuss any matter contained in this notice, we encourage you to contact our loan counselors immediately at 800-799-9250.


Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information obtained will be used for that purpose.  If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

5020

**Homecomings Financial**
*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205

02/08/08

RENEE K SHEPHERD
FLOYD SHEPHERD
8119 S ARTESIAN

CHICAGO IL 60652

YOUR IMMEDIATE ATTENTION IS REQUIRED

RE:   Account Number      7440273993
      Property Address    8119 S ARTESIAN

                          CHICAGO IL 60652

Dear  RENEE K SHEPHERD
      FLOYD SHEPHERD

You were previously notified of your default and the demand for
reinstatement on the above account.

Because you have failed to reinstate, your account may be sent to
an attorney to initiate foreclosure action.  Upon referral, you
may incur substantial fees and costs, and the foreclosure status
will be reported to credit agencies.

Upon completion of the foreclosure:
      * You will lose title to the property.
      * You may be liable for the foreclosure costs, including
        attorney fees.
      * You may be personally liable for any remaining balance
        due.
      * The foreclosure will be reported to credit agencies and to
        the Internal Revenue Service.

If you wish to discuss possible alternatives to avoid the
foreclosure action, please contact us at 800-799-9250.

Notice - This is an attempt to collect a debt and any information
obtained will be used for that purpose.  If your debt has been
discharged in bankruptcy, our rights are being exercised against
the collateral for the above-referenced account, not as a
personal liability.

Loss Mitigation Department
Loan Servicing
5025

**Homecomings Financial**
A GMAC Company
PO Box 205
Waterloo, IA 50704-0205


02/08/08


RENEE K SHEPHERD
FLOYD SHEPHERD
8119 S ARTESIAN

CHICAGO IL 60652


                    YOUR IMMEDIATE ATTENTION IS REQUIRED

RE:  Account Number      7440273993
     Property Address    8119 S ARTESIAN

                         CHICAGO IL 60652

Dear  RENEE K SHEPHERD
      FLOYD SHEPHERD

You were previously notified of your default and the demand for
reinstatement on the above account.

Because you have failed to reinstate, your account may be sent to
an attorney to initiate foreclosure action.  Upon referral, you
may incur substantial fees and costs, and the foreclosure status
will be reported to credit agencies.

Upon completion of the foreclosure:
     * You will lose title to the property.
     * You may be liable for the foreclosure costs, including
       attorney fees.
     * You may be personally liable for any remaining balance
       due.
     * The foreclosure will be reported to credit agencies and to
       the Internal Revenue Service.

If you wish to discuss possible alternatives to avoid the
foreclosure action, please contact us at 800-799-9250.

Notice - This is an attempt to collect a debt and any information
obtained will be used for that purpose.  If your debt has been
discharged in bankruptcy, our rights are being exercised against
the collateral for the above-referenced account, not as a
personal liability.


Loss Mitigation Department
Loan Servicing
5025

## HEALTH — HEARTH

kings. Anc.Laws & Inst. of Eng. Gloss.; Spelman, Gloss.

**HEALTH.** State of being hale, sound, or whole in body, mind or soul, well being. Venable v. Gulf Taxi Line, 105 W.Va. 156, 141 S.E. 622, 624. Freedom from pain or sickness; the most perfect state of animal life. Not synonymous with "sanitation." Black v. Lambert, Tex.Civ.App., 235 S.W. 704, 706. The right to the enjoyment of health is a subdivision of the right of personal security, one of the absolute rights of persons. 1 Bl.Comm. 129, 134. As to injuries affecting health, see 3 Bl. Comm. 122.

**Bill of health.** See Bill.

**Board of health.** See Board.

**Health laws.** Laws prescribing sanitary measures, and designed to promote or preserve the health of the community.

**Health officer.** The officer charged with the execution and enforcement of health laws. The powers and duties of health officers are regulated by local laws.

**Public health.** As one of the objects of the police power of the state, the "public health" means the prevailingly healthful or sanitary condition of the general body of people or the community in mass, and the absence of any general or widespread disease or cause of mortality. The wholesome sanitary condition of the community at large. State ex rel. Pollock v. Becker, 289 Mo. 660, 233 S.W. 641, 649.

**Sound Health.** See "Sound."

**HEALTHY.** Free from disease or bodily ailment, or any state of the system peculiarly susceptible or liable to disease or bodily ailment. Dell v. Jeffreys, 35 N.C. 356.

**HEARING.** Proceeding of relative formality, generally public, with definite issues of fact or of law to be tried, in which parties proceeded against have right to be heard, and in which the same as a trial, and may terminate in final order. In re Securities and Exchange Commission, D.C.N.Y., 14 F.Supp. 417, 419. Synonymous with trial, and includes reception of evidence and arguments thereon. Grant v. Michaels, 94 Mont. 452, 23 P.2d 266. It is frequently used in a broader and more popular significance to describe whatever takes place before magistrates clothed with judicial functions and sitting without jury at any stage of the proceedings subsequent to its inception, and may include proceedings before an auditor. Menard v. Bowman Dairy Co., 296 Ill.App. 323, 15 N.E.2d 1014, 1015.

In equity practice. The trial of the case, including introduction of evidence, argument of counsel, and decree of court. Wolfe v. Wolfe, 141 Neb. 55, 12 N.W.2d 368, 369.

The words "final hearing" have long been used to designate the trial of an equity case upon the merits, as distinguished from the hearing of any preliminary questions arising in the cause, which are termed "interlocutory." Akerly v. Vilas, 24 Wis. 171, 1 Am.Rep. 166.

The term is broad enough to include judicial examination of issue between the parties whether of law or of fact. Keown v. Keown, 231 Mass. 191, 121 N.E. 153, 154.

In criminal law. The examination of a prisoner charged with a crime or misdemeanor, and of the witnesses for the accused.

**Fair hearing.** See Fair Hearing.

**Final hearing.** See Final.

**Preliminary examination.** The examination of a person charged with crime, before a magistrate. Van Buren v. State, 65 Neb. 223, 91 N.W. 201.

**Preliminary hearing.** In criminal law. Synonymous with "preliminary examination." State v. Rogers, 31 N.M. 485, 247 P. 828, 833.

The hearing given to a person accused of crime, by a magistrate or judge, exercising the functions of a committing magistrate, to ascertain whether there is evidence to warrant and require the commitment and holding to bail of the person accused. See Bish. New Cr.L. §§ 32, 225.

It is in no sense a trial for the determination of accused's guilt or innocence, but simply a course of procedure whereby a possible abuse of power may be prevented, and accused discharged or held to answer, as the facts warrant. State v. Langford, 293 Mo. 436, 240 S.W. 167, 168.

**Unfair hearing.** See that title.

**HEARING DE NOVO.** Generally, a new hearing or a hearing for the second time, contemplating an entire trial in same manner in which matter was originally heard and a review of previous hearing. On hearing "de novo" court hears matter as court of original and not appellate jurisdiction. Collier & Wallis v. Astor, 9 Cal.2d 202, 70 P.2d 171, 173.

**HEARSAY.** Evidence not proceeding from the personal knowledge of the witness, but from the mere repetition of what he has heard others say. That which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity. State v. Ah Lee, 18 Or. 540, 23 P. 424, 425; Young v. Stewart, 191 N.C. 297, 131 S.E. 735, 737.

It is second-hand evidence, as distinguished from original evidence; it is the repetition at second-hand of what would be original evidence if given by the person who originally made the statement. Literally, it is what the witness says he heard another person say. Stockton v. Williams, 1 Doug., Mich., 546, 570 citing 1 Starkie, Ev. 229). Evidence, oral or written, is hearsay when its probative force depends in whole or in part on the competency and credibility of a person other than the witness. State v. Kluttz, 206 N.C. 726, 936, 175 S.E. 81. Hearsay is a statement made by a person not called as a witness, received in evidence on the trial. People v. Kraft, 36 N.Y.S. 1034, 1035, 91 Hun, 474. The term is sometimes used synonymously with "report". State v. Vettere, 76 Mont. 574, 248 P. 179, 183; and with "rumor".

**HEARTH MONEY.** A tax levied in England by St. 14 Car. II. c. 10, consisting of two shillings on every hearth or stove in the kingdom. It was extremely unpopular, and was abolished by 1 W. &

## DEBET — DEBT

they were bound to the payment; as by the obligee against the obligor, by the landlord against the tenant, etc. The declaration, in such cases, states that the defendant *"owes to,"* as well as *"detains from,"* the plaintiff the debt or thing in question; and hence the action is said to be "in the *debet et detinet.*" Where the declaration merely states that the defendant *detains* the debt, (as in actions by and against an executor for a debt due to or from the testator,) the action is said to be "in the *detinet*" alone. Fitzh. Nat. Brev. 119, G.; 3 Bl. Comm. 155.

**DEBET ET SOLET.** (Lat. He owes and is used to.) Where a man sues in a writ of right or to recover any right of which he is for the first time disseised, as of a suit at a mill or in case of a writ of *quod permittat,* he brings his writ in the *debet et solet.* Reg. Orig. 144*a*; Fitzh. Nat. Brev. 122, M.

Debet quis juri subjacere ubi delinquit. One [every one] ought to be subject to the law [of the place] where he offends. 3 Inst. 34. This maxim is taken from Bracton. Bract. fol. 154*b*. Finch, Law, 14, 36; Wing. Max. 113; 3 Co. 231; 8 Scott N. R. 567.

**DEBET SINE BREVE.** (Lat. He owes without declaration filed.) Used in relation to a confession of judgment.

Debet sua cuique domus esse perfugium tutissimum. Every man's house should be a perfectly safe refuge. Clason v. Shotwell, 12 Johns. N.Y., 31, 54.

Debile fundamentum fallit opus. A weak foundation frustrates [or renders vain] the work [built upon it.] Shep. Touch. 60; Noy, Max. 5. max. 12; Finch, Law, b. 1, ch. 3. When the foundation fails, all goes to the ground; as, where the cause of action fails, the action itself must of necessity fail. Wing. Max. 113, 114, max. 40; Broom, Max. 180.

**DEBIT.** A sum charged as due or owing. The term is used in book-keeping to denote the left page of the ledger, or the charging of a person or an account with all that is supplied to or paid out for him or for the subject of the account. Also, the balance of an account where it is shown that something remains due to the party keeping the account.

In industrial insurance nomenclature, a certain identified territory in which a solicitor operates by soliciting new business and taking care, as through collection of due debit accounts, of the company's patrons for insurance theretofore written; such insurance being usually written in small amounts on the weekly payment plan. Jones v. Prudential Ins. Co. of America, 173 Mo.App. 1, 155 S.W. 1106, 1107.

**DEBITA FUNDI.** L. Lat. In Scotch law. Debts secured upon land. Ersk. Inst. 4, 1, 11.

**DEBITA LAICORUM.** L. Lat. In old English law. Debts of the laity, or of lay persons. Debts recoverable in the civil courts. Crabb, Eng. Law, 107.

Debita sequuntur personam debitoris. Debts follow the person of the debtor; that is, they have no locality, and may be collected wherever the debtor can be found. 2 Kent, Comm. 429; Story, Confl. Laws, § 362; Halkers. Max. 13.

**DEBITOR.** In the civil and old English law. A debtor.

Debitor non praesumitur donare. A debtor is not presumed to make a gift. Whatever disposition he makes of his property is supposed to be in satisfaction of his debts. 7 Kames, Eq. 212, Where a debtor gives money or goods, or grants land to his creditor, the natural presumption is that he means to get free from his obligation, and not to make a present, unless donation be expressed. Ersk. Inst. 3, 3, 93; Dig. 50, 16, 108; 1 P. Wms. 239; Wh. & Tud. L. Cas. Eq. 378.

Debitorum pactionibus creditorum petitio nec tolli nec minui potest. 1 Poth. Obl. 108; Broom, Max. 697, Bart. Max. 115. The rights of creditors can neither be taken away nor diminished by agreements among (or of) the debtors.

**DEBITRIX.** A female debtor.

**DEBITUM.** Something due, or owing, a debt.

Debitum et contractus sunt nullius loci. Debt and contract are of [belong to] no place; have no particular locality. 7 Co. 61. The obligation in these cases is purely personal, and actions to enforce it may be brought anywhere. 2 Inst. 231; Story, Confl. Laws, § 362; 1 Smith, Lead. Cas. 340, 363; 7 M. & G. 1019, n.

**DEBITUM IN PRÆSENTI SOLVENDUM IN FUTURO.** A debt or obligation complete when contracted, but of which the performance cannot be required till some future period.

**DEBITUM SINE BREVI.** L. Lat. Debt without writ; debt without a declaration. In old practice, this term denoted an action begun by original bill, instead of by writ. In modern usage, it is sometimes applies to a debt evidenced by confession of judgment without suit. The equivalent Norman-French phrase was *"debit sans breve."* Both are abbreviated to d. s. b.

**DEBT.** A sum of money due by certain and express agreement; as by bond for a determinate sum, a bill or note, a special bargain, or a rent reserved on a lease, where the amount is fixed and specific, and does not depend upon any subsequent valuation to settle it. 3 Bl.Comm. 154; Hagar v. Reclamation Dist., 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569; Neilson v. Title Guaranty & Surety Co., 101 Or. 262, 199 P. 948, 951; Shultz v. Ritterbusch, 38 Okl. 478, 134 P. 961, 968; W. S. Tyler Co. v. Deutsche Dampfschiffahrts Gesellschaft Hansa, Bremen, Germany, D.C.Ohio, 276 F. 134, 136.

490

# DEBT

an unconditional promise to pay a fixed sum at a specified time. Lowery v. Feller, 231 Mo.App. 493, 291 S.W. 188, 192. A contractual obligation to pay in the future for consideration received in the present. Leager v. Warren Borough, 321 Pa. 581, 53 A. 832, 834, 43 L.R.A.,N.S., 849. The word "debt" carries with it the requirement of certainty, the foundation of promise by express contract, and necessarily implies legality. Clinton Mining & Mineral Co. v. Benson, C.C.A.Pa., 205 F. 629, 622, 15 A.L.R. 163.

The word "debt," in the definition of a mortgage as a hypothecation or pledge of property as security for a debt, means a duty or obligation to pay, for the enforcement of which an action lies. Stollenwerck v. Marks & Gayle, 188 Ala. 587, 65 So. 1024, 1027 Ann.Cas.1917C, 981; Gibson v. Hopkins, 80 W.Va. 756, 93 S.E. 820, 827.

Standing alone, the word "debt" is as applicable to a sum of money which has been promised at a future day, as to a sum of money now due and payable. To distinguish between the two, it may be said of the former that it is a debt owing, and of the latter that it is a debt due. A sum of money which is certainly and in all events payable is a debt, without regard to the fact whether it be payable now or at a future time. A sum payable upon a contingency, however, is not a debt, or does not become a debt, until the contingency has happened. People v. Arguello, 37 Cal. 524.

A sum of money arising upon a contract, express or implied. Kimpton v. Bronson, 45 Barb. N.Y., 618; Johnson v. Garner, D.C.Nev., 233 F. 756, 787. Also, the obligation to pay a sum certain; Indian Refining Co. v. Taylor, 195 Ind. 223, 143 N.E. 682, 689; or a sum which may be ascertained by simple mathematical calculation from known facts; H. G. Kilbourne Co. v. Standard Stamp Affixer Co., 216 Mass. 118, 103 N.E. 469, 470; regardless of whether the liability arises by contract or is implied or imposed by law; State v. Latham, 136 Tenn. 30, 188 S.W. 534, 537; Lindstrom v. Spicher, 53 N.D. 195, 205 N.W. 231, 233, 41 A.L.R. 968.

A "debt" is a specified sum of money owing to one person from another, including not only the obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. Appeal Brick & Tile Co. v. Millgrove School Tp., Steuben County, 73 Ind.App. 557, 127 N.E. 563, 565; Hervey v. Dotson, 31 Ga.App. 352, 120 S.E. 813, 807.

A fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future. Burke v. Boulder Milling & Elevator Co., 77 Colo. 230, 235 P. 574, 575.

In a still more general sense, that which is due from one person to another, whether money, goods, or services. Holman v. Hollis, 94 Fla. 614, 114 So. 254, 255; State v. State Board of Examiners, 74 Mont. 1, 238 P. 316, 323.

A "debt" is an obligation arising otherwise than by sentence by a court for a breach of the public peace or for crime. Rugeley v. State, 102 Tex.Cr. 355, 87 A. 1062, 1061.

In a broad sense, any duty to respond to another in money, labor, or service; it may even mean a moral or honorary obligation, unenforceable by legal action. U. S. Sugar Equalization Board v. P. De Ronde & Co., C.C.A.Del., 7 F.2d 981, 984.

Also, sometimes, an aggregate of separate debts, or the total sum of the existing claims against a person or company. Thus we speak of the "national debt," the "bonded debt" of a corporation, etc.

The word "debt" has no fixed legal meaning; Electric Reduction Co. v. Lewellyn, C.C.A.Pa., 11 F.2d 493, 494; but takes shades of meaning from the occasion of its use

and color from accompanying words; Morrow v. Hayes, 226 Mich. 391, 197 N.W. 534, 535.

The word is of large import, including not only debts by specialty, and debts of record, or judgments (Liberty Mut. Ins. Co. v. Johnson Shipyards Corporation, C.C.A.N.Y., 6 F.2d 752, 756; Schooley v. Schooley, 184 Iowa 353, 168 N. W. 36, 57, 11 A.L.R. 110; Brenson v. Syverson, 88 Wash. 264, 152 P. 1039, 1040, L.R.A.1916D, 1231; Rosenberg v. Rosenberg, 162 Md. 49, 135 A. 840), but also obligations arising under simple contract, to a very wide extent; and in its popular sense includes all that is due to a man under any form of obligation or promise. McCrea v. First Nat. Bank, 162 Minn 455, 203 N.W. 220; Allr'd Ins. Co. v. Robertson, 123 Miss. 387, 85 So. 853, 880.

## Synonyms

The term "demand" is of much broader import than "debt," and embraces rights of action belonging to the debtor beyond those which could appropriately be called "debts." In this respect the term "demand" is one of very extensive import. In re Denny, 2 Hill, N.Y., 223.

Nevertheless, "debt" may be synonymous with "claim;" In re Littleton's Estate, 223 N.Y.S. 479, 129 Misc. 845; and may include any kind of a just demand. Coulberg v. Parker, 87 Conn. 90, 86 A. 585, 587, 46 L.R.A.,N.S., 1057, Ann.Cas.1914C, 1059.

The word is equivalent to "debts," or that which is owing and has a contractual significance. State v. Mortgage Security Co., 104 Minn. 453, 192 N.W. 348, 350.

"Debt" is not exactly synonymous with "duty." A debt is a legal liability to pay a specific sum of money; a duty is a legal obligation to perform some act. Allen v. Dickson, Minor, Ala., 163.

"Obligation" is a broader term than "debt." Howes v. Boyle, 23 Okla. App. 166, 135 P. 457, 460. Every obligation is not a debt though every debt is an obligation. Lindstrom v. Spicher, 53 N.D. 195, 205 N.W. 231, 233, 41 A.L.R. 968; In re Moorehead's Estate, 289 Pa. 542, 137 A. 800, 806, 52 A.L.R. 1251.

The words "debt" and "liability" are not necessarily synonymous. As applied to the pecuniary relations of parties, liability is a term of broader significance than debt. Coulter Dry Goods Co. v. Wentworth, 171 Cal. 500, 153 P. 939, 940. Liability is responsibility; the state of one who is bound in law and justice to do something which may be enforced by action. This liability may arise from contracts either express or implied, or in consequence of torts committed. McElfresh v. Kirkendall, 36 Iowa 226. "Liability" ordinarily means an obligation which may or may not ripen into a debt. Irving Sav. Columbia Trust Co. v. New York Rys. Co., D.C.N.Y., 292 F. 629, 633. Yet "debt" may sometimes include various kinds of liabilities. See Allen v. Cosmopolitan Trust Co., 247 Mass. 334, 142 N. W. 160, 103; Carroll v. Bowling, 151 Md. 521, 135 A. 361, 851.

## In General

**Active debt.** One due to a person. Used in the civil law.

**Ancestral debt.** One of an ancestor which the law compels the heir to pay. Watkins v. Holman, 16 Pet. 25, 10 L.Ed. 873; A. & E. Encyc.

**Debt by simple contract.** A debt or demand founded upon a verbal or implied contract, or upon any written agreement that is not under seal.

**Debt by specialty or special contract.** A debt due, or acknowledged to be due, by some deed or instrument under seal; as a deed of covenant or obligation, a lease reserving rent, or a bond or obligation. 2 Bl.Comm. 465; In re Harris, 101 N.J.Eq. 5, 137 A. 215, 216; Kerr v. Lydecker, 51 Ohio St. 240, 37 N.E. 267, 23 L.R.A. 842; Marriott v. Thompson, Willes, 189.

Doc#:  0702439107 **Fee: $18.00**
Eugene "Ge  e" Moore RHSP Fee:$10.00
Cook County  Recorder of Deeds
Date: 01/24/1907 03:13 PM  Pg:  1 of 2

Mechanics Lien

**RECORDING REQUESTED BY AND MAIL TO:** |
**Name:** Floyd Shepherd |
**Street Address:** c/o 8119 South Artesian St. |
**City, State & Zip:** Chicago, Illinois [60652] |
-------------------------------------- SPACE ABOVE THIS LINE FOR RECORDER'S USE-------------

# Mechanic's Lien
## (Claim of Lien)

The undersigned <u>Floyd-Shepherd: Patriot,</u> claimant, claims a Mechanic's Lien upon the following described land located specifically over, under and all inclusive for: <u>8119 SOUTH ARTESIAN STREET in the City of Chicago, County OF COOK, State of Illinois;</u> and more completely described as real property: <u>LOT 38 IN BLOCK 1 IN HINKAMP AND COMPANY'S WESTERN AVENUE SUBDIVISION, BEING A RESUBDIVISION OF LOTS 1 TO 24 INCLUSIVE IN BLOCK 1, LOTS 1 TO 24 INCLUSIVE IN BLOCK 2, LOTS 1, 2, 10 TO 20 INCLUSIVE IN BLOCK 3, LOTS 1 TO 10 INCLUSIVE BLOCK 4, LOTS 1 TO 10 INCLUSIVE IN BLOCK 5 IN HAZLEWOOD AND WRIGHT'S SUBDIVISION OF THE SOUTH ½ OF THE NORTHEAST ¼ OF SECTION 36, TOWNSHIP 38 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. PROPERTY INDEX NUMBER: 19-36-223-007-0000. ORIGINAL PATENT RIGHTS, STATE OF ILLINOIS, COUNTY OF COOK. COUNTY OF COOK, and the State of Illinois, a republic for the land of Illinois will forever belong to the people.</u> The sum of <u>$225,000.00,</u> together with interest there upon at the highest legal rate per annum from <u>January 24th, 2007</u> is due claimant (after deducting all just credits and offsets) for the following work, equipment, and material furnished by claimant: <u>Floyd-Shepherd: Patriot.</u>
Claimant furnished the work and materials at the request of, or under contract with: <u>Floyd-Shepherd: Patriot.</u> The owner(s) and reputed owner(s) of the property is/are: <u>Floyd-Shepherd: Patriot.</u>

Name of Claimant: <u>Floyd-Shepherd: Patriot</u>

By: <u>Floyd-Shepherd: Patriot</u>

### VERIFICATION

I, the undersigned, declare: I am the claimant or agent of the claimant of the foregoing Mechanic's Lien; I have read said claim or Mechanic's Lien and know the contents thereof; the same is true to my own knowledge. I am authorized to execute this Claim of Lien. I declare under penalty of perjury that the foregoing is true and correct. Executed on <u>January 24th, 2007,</u> at <u>Chicago, Illinois.</u>

Without Prejudice. All rights and remedies reserved UCC1-207, Non-assumpsit. No liability, no assured value

By: _Floyd Shepherd_ _____ Seal: F. J.
By: Floyd-Shepherd: Patriot, Title Owner
Signature of secured party with Power of Attorney
in fact for FLOYD SHEPHERD©

**RECORDING REQUESTED BY**

    [Floyd Shepherd]

**AND WHEN RECORDED MAIL TO:**

    [Floyd Shepherd]

    8119 S. Artesian St.

    Chicago, Illinois  [60652]
    <not in any federal enclave>



Doc#:   0803010070 Fee: $18.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 01/30/2008 12:14 PM  Pg: 1 of 2

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

# Mechanic's Lien
## (Claim of Lien)

The undersigned <u>Floyd Shepherd</u>, <u>Renee K. Shepherd</u>, claimant, claims a Mechanic's Lien upon the following described land located specifically over, under and all inclusive for: <u>8119 S. ARTESIAN STREET, CHICAGO ILLINOIS, 60652</u>; and more completely described as real property: *<u>Lot 38 in Block 1 in Hinkamp and Company`s Western Avenue Subdivision, being a resubdivision of Lots 1 of 24, Inclusive, in Block 1, Lots 1 to 24, inclusive, in Block 2, Lots 1,2, 10 to 20, inclusive, in Block 3, Lots 1 to 10, Inclusive, in Block 4, Lots 1 to 10, inclusive, in Block 5 in Hazelwood and Wrights subdivision of the South half of the Northeast quarter of Section 36, Township 38 North, Range 13 East of the Third Principal Meridian, in Cook County, Illinois. Property Pin: 19-36-223-007-0000.</u>* The sum of $4,695,000.00. Four Million Six Hundred Ninety Five Thousand Dollars. This amount is for damages incurred by Homecomings Financial (GMAC), by not verifying the debt per Title 15 Section 1692A. See reference document number #: 0731803054. Damages were incurred as of June 2007.

                        Name of Claimants: <u>Floyd Shepherd</u>
                                         <u>Renee Kimbrough Shepherd</u>
                                         <u>Clinton Gregory Shepherd</u>
                                         <u>Christopher Michael Shepherd</u>

                                         By: <u>Floyd Shepherd</u>

## VERIFICATION

I, the undersigned, declare: I am the claimant or agent of the claimant of the foregoing Mechanic's Lien; I have read said claim or Mechanic's Lien and know the contents thereof; the same is true to my own knowledge. I am authorized to execute this Claim of Lien.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on <u>January 30th, 2008</u>, at <u>Republic of Illinois</u>. <u>County of Cook</u>.

All rights and remedies reserved, Without Prejudice.

By: _____

By: Floyd Shepherd, Secured Party, American
National, Signature of secured party with Power
of Attorney in fact for FLOYD SHEPHERD©

By _____

Renee K. Shepherd, Secured Party, Power of
Attorney in fact for RENEE K. SHEPHERD©

Others parties of interest:
Clinton Gregory Shepherd
Christopher Michael Shepherd

_____
NOTARY

OFFICIAL SEAL
ALMA ROJAS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/24/11

I <u>Floyd Shepherd</u> and <u>Renee K. Shepherd</u> personally appeared with proper
identification, in front of a commissioned notary on the ___30___ day of
___JANUARY___ 2008.

Mechanic's Lien                    Page 2                    1/29/2008

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLOYD SHEPHERD,                    )
                    Plaintiff,     )
                                   )
            v.                     )        Case No. 08-cv-622
                                   )
HOMECOMINGS FINANCIAL (GMAC))               Judge Gottschal
                    Defendants.    )        Magistrate Judge Brown

All documents listed below were sent certified mail receipt on May 8th F.$\}$, 2008
7007-2560-0000-9077-3092 and are being resent again overnight express.

1. Plaintiffs Request for productions, 2 Pages
2. Plaintiffs Request for admissions, 2 Pages
3. Plaintiffs first set of Interrogatories, 2 Pages
4.

## CERTIFICATE OF SERVICE

I Victor Thompson, Notary Acceptor do acknowledge that Floyd Shepherd, Plaintiff
mailed copies of the following documents to Defendant by overnight express
through the United States Postal Service. These documents were presented to me in
person and are listed above. Foregoing was sent to Douglas R. Sargent, of Lock,
Lord Bissell and Liddell, LLP, 111 South Wacker Drive, Chicago Illinois 60606. On
this 7th, day of May 2008.
This notary page will be attached to every discovery request as the second page.

Floyd Shepherd,
8119 S. Artesian St.
Chicago, Illinois 60652
773-590-1873