

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAY 1 6 2008
**FILED**
J N
MAY 1 6 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FLOYD SHEPHERD,     )
       Plaintiff,     )
                  )
      v.            )     Case No. 08-cv-622
                  )
HOMECOMINGS FINANCIAL (GMAC))     Judge Gottschall
       Defendants.    )     Magistrate Judge Brown

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, TO ANSWER INTERROGATORIES AND REQUEST FOR ADMISSIONS

PLAINTIFF Floyd Shepherd, pursuant to Federal Rule of Civil Procedures, Rule 34, Rule 33 and Rule 26. Plaintiff moves the court for an order to compel defendant Homecomings Financial to answer interrogatories, request for admission and request for productions.

Defendant said he refuses to answer discovery in court on 5/15/2008.
Defendant was served discovery on 5/5/2008.
Pursuant to the rule, defendant has 30 days to respond to plaintiffs request.
Plaintiff is entitled to an order-compelling discovery as a matter of law.
Plaintiff moves the court for a court order compelling defendant to answer discovery by June 6th, 2008.

### SUPREME COURT CASES
Chase Manhatten Mortgage Corporation v. Lynne E. Goodrich and Leana M. Goodrich

John P. McCay, Jr. and Rosemary L. McCay v. Capital Resources Company, LTD

J. Vincent O`Neill, Appellant, v. Corporate Trustee, Inc., Appelle.  376 F. 2d 818 No. 23898

According to first two Supreme Court cases a mortgage company cannot foreclose unless the original note is produced. No standing to enforce the terms of the note. <u>All cases are fully attached.</u> A copy of these cases will be sent to the Sheriff Office, 50 West Washington, Chicago, Illinois 60602 by certified mail. Certified mail #7007-2560-0000-9077-3108. Received by sheriff on May 14th, 2008.

According to J. Vincent O`Neill v. Corporate Trustee, Inc. In order to be a contract, the parties must have a definite and distinct intention, common to both and without doubt or difference. This case is fully attached and sent to the sheriff's office.

1

**THE PLAINTIFF WAS DENIED DUE PROCESS BY ALLOWING THE DEFENDANTS ATTORNEY ADMMISSIONS, STATEMENTS AND BRIEFS WHICH CONSTITUTED HERSEAY UNDER ILLINOIS AND FEDERAL LAW THEREBY DENING THE PLAINTIFF THE RIGHT OF CONFRONTATION UNDER THE UNITED STATE CONSTITUTION**

UNITED STATES v. LOVASCO (06/09n7) 431.S. 783. 97 S Ct. 2044. 51 LEd. 2d 752,

GONZALES v. BUIST. (04/04/12] 224 U.S. 126. 56 LEd. 693. 32 S Ct 463

BOLT v. UNITED STATES (10131/10) 218 U.S. 245, 54 L. Ed. 1021.31 S Ct. 2

Trinsey v. Paeliaro. D.C.Pa. 1964.229 F. Supp. 647.

Oklahoma Court Rules and. Procedure, Federal Local Rule 7.1 (h).

**UNIFORM COMMERCIAL CODE**
Plaintiff has a superior lien against his name and property. Filed in the docket and in the county, as the UCC Financing Statement. CCRD #0624132051. Secured party first in line. See Diversified metal products v. T-Bow company trust, IRS, et al.

**DUTY OF A LOAN OFFICER**
TITLE 12 CHAPTER 38A § 3756
Title 12 Sec. 2605 (e) Duty of loan servicer to respond to borrower inquiries.

**REQUIREMENT OF ORIGINAL DOCUMENTS**
Rule l002- requirement of the original
To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by act of congress.

**ILLINOIS MORTGAGE FORECLOSURE LAW**
The Illinois Mortgage Foreclosure Law (IMFL) 735 ILCS 5/2-1101 et. Seq. requires all complaints to foreclosure a mortgage, be verified. A verified complaint means that the so called lender, has submitted facts of which they have personal first hand knowledge, to the court by testimony, either by appearing and giving oral testimony or by submitting a written and sworn affidavit of having such personal first hand knowledge. These facts and evidence must appear on the record before a judge has been granted subject matter jurisdiction to issue a judgment of foreclosure.

**MEMORANDUM OF LAW**
Our Supreme Court has ruled that "Because a court does not acquire jurisdiction by a mere recital contrary to what is shown in the record"; the record of the case is the

determination factor as to whether a court has jurisdiction. State Bank of Zurh v. Thin, 113 ILL. 2d 294, 497 N.E.2d 1156 (1986). A judge's allegation that he has subject-matter jurisdiction is only an allegation (Lombard v. Elmore, 134 Ill.App.3d 898,480 N.E.2d 1329 (1st Dist. 1985); The People v. Brewer, 328 Ill 472, 483 (1928) ("If it could not legally hear the matter upon the jurisdictional paper presented, its finding that it had the power can add nothing to its authority, it had no authority to make that finding. "). Without the specific findings of jurisdiction by the court in an order or judgment, the order or judgment does not comply with the law and is void. Defendant has placed no fact on the record, No fact appears on record whether by deposition, admission, answers to interrogatory, answer to dispute and request for validation of the debt, or by affidavit to support the averments of plaintiff's pleading.

## VERIFICATION & VALIDATION -WHERE IS THE EVIDENCE

Where the defendant cannot prove the existence of the note, then there is no note. To recover on a promissory note, the defendant must prove: (1) the existence of the note in question: (2) that the party signed the note: (3) that the defendant is the owner or holder of the note: and (4) that a certain balance is due and owing on the note. See In Re: SMS Financial LLC V. Abco Homes, Inc. No.98-50117 February 18 1999 (5th Circuit Court Of Appeals.) Volume 29 of the New Jersey Practice Series, Chapter 10 Section 123, page 566, emphatically states, "...; and no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or not and part payments are endorsed thereon. It would seem that the mortgager would normally have a Common law right to demand production or surrender of the bond or note and Mortgage, as the case may be See Restatement, Contracts S 170(3), (4)(1932); C.J.S. Mortgage S 469 in Carnegie Bank v Shalleck 256 N.J. Super 23 (App.Div 1992). When the underlying mortgage is evidenced by an instrument meeting the Criteria for negotiability set forth in N.J.S. 12a:3-104, the holder of the Instrument shall be afforded all the rights and protections provided a holder in Due course pursuant to N.J.S.12A.3-102" Since no one is able to produce the "instrument" there is no competent evidence before the Court that neither party is the holder of the alleged note or the true holder in due course.

## PLAINTIFFS DISCOVERY #7007-2560-0000-9077-3092

If plaintiff is not allowed to finish discovery even though defendant was allowed to enter hearsay evidence in the docket, then the court has shown favoritism. The court has shown where its interest lie. The plaintiff was denied due process and at this point the court lacks subject matter jurisdiction. Everybody is entitled to Due Process at every stage of the proceeding, Griffin v. Illinois,(1965) 100 L. ed 891, 351, U.S. 12,79 S. Ct. 585,55 Alr 2d 1055.

And Sec. 12, "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, and completely, and promptly." The essential elements of "due process of law" are notice and opportunity to be heard and to defend in orderly proceedings adapted to nature of case and the guarantee, "law of the land." "due course of

law," and "due process of law" are synonymous. People v. Skinner, Cal., 110 P. 2d 41, 45. But "judicial process" and "judicial proceedings" are not necessarily synonymous with "due process." Pennsylvania Publications v. Pennsylvania Public Utility Commission, 152 pa,m Super. 279, 32 A. 2d 40, 49; Barry v. Hall, 98 F. 2d 222, 68 App. D.C. 350.

1.  Defendant was asked and has a duty to verify the debt pursuant to 15 USC 1692a. The first verification of the debt letter was mailed on May 2nd, 2007. Homecomings Financial was told that verification was to be under oath or deposition per blacks law dictionary 4th edition. Defendant responded with a copy of the contract.

2.  According to 15 USC 1692 section 809(b), the debt collector must stop collection until the debt is verified. Homecomings Financial is a debt collector. See Exhibit 2.

3.  Under the law Title 12 CFR Section 226.13, a consumer has the right to withhold payment until the dispute is resolved and the creditor is prohibited from all collection efforts, as well as adding late charges and fees if the account is still in dispute. Continued action to attempt to collect payment on a disputed account is in violation of Federal law Title 12 Code of Federal Regulations (CFR) Banks and Banking section (sect.) 226.13 (d)(1), which specifically states... Consumers right to withhold disputed amount; collection action prohibited. The consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges.)" Last time plaintiff checked his credit is showing late charges and fees.

4.  Under the law Title 12 CFR Section 226.12 (Truth in Lending), a bank is prohibited from reporting negatively on your credit report until a dispute is resolved. Your account should either read, "in dispute", and or "closed per customer request". Many times they report as closed by guarantor (them) and also as late. This is your evidence of their violation of federal law. As stated under Title 12 CFR section 226.12 (c) (2): *Customer is requesting that my account reads closed. Last time plaintiff checked his credit is showing late charges and fees, which is adversely affecting credit.*

4.  The scope of the banks charter authority expressly violates federal law under Title 12 CRR section 24.7 by loaning credit as well as charging a usurious interest on that credit.

6.  Truth in Lending Act is strictly a liability statute liberally construed in favor of consumers. Truth in Lending Act Section 102 et seq., 15 U.S.C. Section 1601 et seq. Brophv v. Chase Manhattan Mortgage Co, 947 F.Supp. 879.

7.  Once a creditor violates the Truth In Lending Act, no matter how technical violation appears, unless one of statutory defenses applies, Court has no

discretion in imposing liability. Truth in Lending Act, Sections 102-186 as amended, 15 U.S.C. Section 1601-1667e. Solis v. Fidelity Consumer Discount Co. 58 BR, 983.

8. "It is not necessary for recession of a contract that the party making the misrepresentation should have known that it was false, but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations." Whipp v. Iverson, 43 Wis 2d 166.

9. "If any part of the consideration for a promise be illegal, or if there are several considerations for an unseverable promise one of which is illegal, the promise, whether written or oral, is wholly void, as it is impossible to say what part or which one of the considerations induced the promise." Menominee River Co. v. Augustus Spies L & C Co., 147 Wis 559, 572; 132 NW 1122

10. "When an instrument [note] lacks an unconditional promise to pay a sum certain at a fixed and determined time, it is only an acknowledgement of the debt and statutory presumptions like the presence of a valuable consideration, are not applicable." Bader vs. Williams, 61 A 2d 637

11. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." Barnsdall Refining Corn. v. Birnam wood Oil Co., 92 F 2d 817.

<u>Certificate of Service</u>

I certify that a copy of the foregoing was mailed and emailed to Douglas R. Sargent, of Lock, Lord Bissell and Liddell, LLP, 111 South Wacker Drive, Chicago Illinois 60606. On this 16th, day of May 2008.

Floyd Shepherd,
8119 S. Artesian St.
Chicago, Illinois 60652
773-590-1873

# **EXHIBIT (2)**

**Homecomings Financial**
*A GMAC Company*
PO Box 205
Waterloo, IA 50704-0205


01/09/08


RENEE K SHEPHERD
FLOYD SHEPHERD
8119 S ARTESIAN

CHICAGO                    IL 60652



RE:    Account Number      7440273993
       Property Address    8119 S ARTESIAN

                           CHICAGO IL 60652

Dear RENEE K SHEPHERD
     FLOYD SHEPHERD

Our records indicate the above-referenced mortgage loan is in
default.

Your account is due for 12/01/07, and succeeding payments. This
is a demand for payment of the total amount due and owing as of
the date of this letter, which is as follows:

| | | |
|---|---|---|
| Payments ............................... $ | | 2832.79 |
| Late Charges .......................... $ | | 179.81 |
| Fees, Costs, and other amounts accrued | | |
| to date ............................ $ | | 48.75 |
| Suspense .............................. $ | | 0.00 |
| Total Amount Due ...................... $ | | 3061.35 |

You may cure the default by paying the total amount due,
indicated above, within thirty (30) days from the date of this
letter.  You are also responsible for paying any additional
payments, fees, and charges that become due during this 30-day
period.  Payments must be made in certified funds or cashier's
check.  If funds tendered are not honored for any reason, the
default will not be cured.  Our acceptance of any funds less
than the total amount due shall not constitute a waiver of our
rights and/or remedies under the loan documents or applicable
law.


(continued on back)

01/09/08
Account Number   7440273993
Page Two


You are hereby notified your credit rating may be adversely affected if you fail to fulfill the terms of your credit obligations.  You are also notified we may visit the above-referenced property from time to time to determine its condition and occupancy status, the costs of which you will be responsible for.

Unless we receive full payment of all past-due amounts, we will accelerate the maturity of the loan, declare the obligation due and payable without further demand, and begin foreclosure proceedings.  This could result in the loss of your property. You have the right to assert or defend the non-existence of a default and you may have other rights under state law.

Once in foreclosure, you have the right to reinstate your account up to five days prior to the foreclosure sale of the property if: 1) you pay the total amount due plus any fees, costs and other amounts accrued through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property, as well as your obligations under the loan documents continue in full force and effect.

HUD-approved counseling is available on FHA guaranteed loans by calling 800-569-4287.  If you would like to discuss any matter contained in this notice, we encourage you to contact our loan counselors immediately at 800-799-9250.


Collection Department
Loan Servicing

Notice - This is an attempt to collect a debt and any information obtained will be used for that purpose.  If your debt has been discharged in bankruptcy, our rights are being exercised against the collateral for the above-referenced loan, not as a personal liability.

5020

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=ia&vol=app%5C20040909%5C02-1889&invol=1

FindLaw> State Resources> Iowa> Primary Materials> Iowa Court Opinions

**IN THE COURT OF APPEALS OF IOWA**

No. 4-561 / 02-1889

Filed September 9, 2004

**CHASE MANHATTEN MORTGAGE CORPORATION,**

      Plaintiff-Appellee,

**vs.**

**LYNN E. GOODRICH and LEANA M. GOODRICH,**

      Defendants-Appellants,

**HOME FEDERAL SAVINGS BANK, U.S. BANK, NATIONAL ASSOCIATION, and GENERAL SERVICE BUREAU, INC.,**

      Defendants.

Appeal from the Iowa District Court for Harrison County, Gordon C. Abel, Judge.

Lynn E. Goodrich and Leana M. Goodrich appeal from the adverse ruling by the district court. **AFFIRMED**.

Lynn Goodrich, Woodbine, for appellant pro se.

Mark Walz, Des Moines, for appellee.

Considered by Huitink, P.J., and Hecht and Eisenhauer, JJ.

**HECHT, J.**

Lynn E. Goodrich and Leana M. Goodrich appeal from an adverse ruling on their petition to vacate a judgment in a mortgage foreclosure action. We affirm.

## I.    Factual Background and Proceedings.

Chase Manhattan Mortgage Corporation (Chase) brought an action against the Goodriches to foreclose a mortgage executed on December 29, 1995. The district court granted Chase's motion for summary judgment on August 13, 2001, after the Goodriches withdrew their resistance in consideration for Chase's agreement to delay the foreclosure sale until six months after entry of a foreclosure decree.

On March 11, 2002, Chase filed an affidavit affirming that the original of the promissory note secured by the mortgage in question had been lost. On March 18, 2002, the district court filed a decree of foreclosure expressly authorizing the document to be filed notwithstanding Chase's failure to file the original note for cancellation.

On April 4, 2002, the Goodriches filed a "Motion to Set Aside Foreclosure & Decree and Motion for New Trial." These motions sought relief from the judgment of foreclosure on the ground that Chase's failure to produce the original of the promissory note was newly discovered evidence justifying a new trial. After the district court authorized their counsel to withdraw on July 1, 2002, the Goodriches filed their pro se "Motion to Vacate A Void Judgment and Dismiss" asserting that the judgment of foreclosure should be vacated because (1) the district court lacked subject matter jurisdiction, (2) the judgment was obtained through a violation of the Fair Debt Collection Practices Act and deprivation of their due process rights, (3) the original promissory note was not filed by Chase, and (4) their constitutional right to competent legal counsel was infringed. Chase resisted the motions and requested sanctions against the Goodriches on the ground that the motions were frivolous. The district court overruled the motions, found they were not based on existing law or the good faith extension of existing law and ordered the Goodriches to pay $150 for Chase's attorney fees.

On appeal, the Goodriches contend the judgment against them should be vacated because (1) the record was insufficient to support the summary judgment against them, (2) their due process rights were infringed because Chase "produced no competent witness for cross examination", (3) Chase's Lost Note Affidavit lacked credibility, (4) they have not had an opportunity to examine for authenticity the newly discovered original note that was found after judgment was entered, and (5) the "Truth in Lending Act" was violated.

## II.      Scope and Standards of Review.

We review summary judgment rulings for errors of law. *Grovihohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002). We similarly review rulings on motions to vacate judgments for errors of law. *In re Marriage of Kinnard*, 512 N.W.2d 821, 823 (Iowa Ct. App. 1993). The district court enjoys considerable discretion in determining whether to vacate a judgment. *Id.*

## III.     Discussion.

Several of the separate contentions articulated by the Goodriches posit that the summary judgment record was insufficient to support the summary judgment and decree of foreclosure. Central to these contentions is the mistaken notion that a judgment of foreclosure could not be entered because Chase failed to produce the original of the promissory note. Iowa Rule of Civil Procedure 1.961 contemplates that judgment on a note may be entered without production of the original note if the court so orders. The district court did by order authorize the foreclosure despite Chase's failure to produce the original note. Thus, we conclude the summary judgment record was not insufficient to support the judgment of foreclosure despite Chase's failure to produce the original of the note. Our resolution of this issue is strongly influenced by the fact that the Goodriches make no contention that either Chase's Lost Note Affidavit or the foreclosure decree misstated any term of the promissory note.

The Goodriches further contend the original promissory note found after entry of the judgment of foreclosure constitutes newly discovered evidence which they have not had an opportunity to inspect for authenticity. The court record discloses the note was filed by Chase and thereby made available for inspection after the judgment was entered. We find it significant that the Goodriches acknowledge they have not availed themselves of

the opportunity to examine the document even after it was made part of the court file in this case. As noted above, they make no argument that the terms stated in the original note differ from the terms of the contract found by the district court. Accordingly, even if the original note could be viewed as newly discovered evidence, the district court did not abuse its discretion in determining that such evidence did not justify vacation of the judgment against the Goodriches.

The due process claim asserted by the Goodriches is also without merit. When they withdrew their resistance to the motion for summary judgment, they waived any claims that the nature and quality of the evidence produced by Chase failed to adequately support the judgment against them. Included among the claims thus waived is the claim that the Goodriches were entitled to cross-examine a witness called by Chase to testify.

We have reviewed all other arguments and claims raised on appeal by the Goodriches and find they were waived or without merit.

**AFFIRMED.**

John P. McCAY, Jr. and Rosemary L. McCay v.
CAPITAL RESOURCES COMPANY, LTD.

96-200                              _ _ S.W.2d _ _ _

Supreme Court of Arkansas
Opinion delivered March 24, 1997

1.  Mortgages -- original note's terms could not be enforced by
    use of copy without proving it lost, destroyed, or stolen as
    required in code -- adequate protection to appellants from
    future claim not given. --  Where appellee apparently never
    possessed appellants' original note as provided in Ark. Code
    Ann. □ 4-3-309(a)(i) (Repl. 1991), but was required, even if
    it had, to have proven all three factors specified in □ 4-3-
    309(a) and did not do so, appellee could not enforce the
    original note's terms by the use of a copy; even if all three
    requirements in □ 4-3-309(a) had been proven, the trial court
    was still obligated to ensure that appellee provided adequate
    protection to the appellants from any future claim, and this,
    too, was not done.

2.  Evidence -- argument that rules of evidence supersede
    requirements of UCC without merit -- appellee failed to either
    produce original of note or satisfy requirements for lost
    negotiable instrument. -- Appellee's argument that the trial
    court was correct in admitting the copy of the note as an
    exception under the best evidence rule and that the Arkansas
    Rules of Evidence superseded the requirements of the Uniform
    Commercial Code (UCC) was without merit; if a duplicate was
    allowed in place of the original note, the appellants could
    later be subjected to double liability if the actual holder of
    the note appeared; the rules of evidence are rules of the
    court involving legal proceedings, while the UCC is composed
    of statutes of law that established the rights and liabilities
    of persons; appellee, as an assignee of the appellants' note,
    could not sue on the underlying debt the appellants owed to
    the original lender; in order for appellee to have prevailed
    in enforcing the note, it was required either to produce the
    original or satisfy the requirements for a lost negotiable
    instrument under □ 4-3-309(a) and (b); because appellee failed
    to do either, the case was reversed and remanded.

Appeal from Garland Chancery Court; David B. Switzer,

Chancellor; reversed and remanded.

Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd., by: John
E. Pruniski and Dorcy Kyle Corbin, and The Harmon Law Firm, P.A.,
by: John T. Harmon, for appellants.

Tom Glaze, Justice.

In 1987, appellants John and Rosemary McKay, Jr., purchased a
condominium unit in Hot Springs. They financed the purchase
through Landmark Savings Bank, F.S.B., by a promissory note secured
by a mortgage on the unit. In 1990, Landmark Savings was placed
into receivership with the Resolution Trust Corporation (RTC), and
in 1993, the RTC assigned the McKay note and mortgage to Magnolia
Federal Bank for Savings of Hattiesburg, Mississippi.

Subsequently, the McKays defaulted on the note, and on
April 12, 1994, Magnolia Federal filed a complaint to foreclose on
the McKay mortgage, but during the pendency of that foreclosure
suit, on June 29, 1995, Magnolia Federal assigned the McKay note
and mortgage to appellee Capital Resources Company, Ltd. Capital
Resources in turn filed a petition requesting it be substituted for
Magnolia Federal as party-plaintiff in the foreclosure action. An
order granting Capital Resources' motion was entered on
September 25, 1995.

At the conclusion of the trial held on September 27, 1995, the
McKays moved to dismiss the foreclosure action because Capital
Resources failed to produce the original promissory note or account
for the note's absence. The chancellor denied McKay's motion, and
on October 19, he entered a foreclosure decree in Capital
Resources' favor, awarding a judgment against the McKays in the
amount of $117,387.06. The McKays appeal from the foreclosure
decree and denial of their motion to dismiss.

The McKays challenge the trial court's ruling that Capital
Resources was not required to produce the original promissory note
at trial, but instead could prove its case by introducing only a
copy of the note. As argued below, they contend that under the
Uniform Commercial Code, Capital Resources was required either to
produce the original note or to explain its absence. The McKays
maintain that without production of the original note, Capital
Resources cannot prove its status as a holder entitled to sue on
the note. They further submit that Capital Resources' failure to
produce the original note subjects them to double liability should
a subsequent holder of the original note appear.

The McKays point out that Arkansas case law dating as far back
as 1842 has required a creditor to prove the debt by admitting the
original promissory note into evidence. See Beebe v. Real Estate
Bank, 4 Ark. (1842) (profert of a promissory note is required by
statutes placing promissory notes on the same footing and of equal

dignity with instruments under seal). Furthermore, they cite
Vandergriff v. Vandergriff, 211 Ark. 848, 202 S.W.2d 967 (1947),
where this court held there can be no judgment on a note when it is
not introduced into evidence and where the note's absence is not
explained. This court has also held that secondary evidence of the
contents of a note is inadmissible when the original is within the
control or custody of the one seeking to enforce it. Chaviers v.
Simmons, 256 Ark. 731, 510 S.W.2d 301 (1974).

Article 3 of the UCC, first enacted in 1961 and replaced in
1991, governs the treatment of negotiable instruments. Ark. Code
Ann. □□ 4-3-101--605 (Repl. 1991). Here, because their promissory
note is a negotiable instrument as defined by □ 4-3-104(a), the
McKays contend, and we agree, that Capital Resources was obligated
to satisfy the UCC requirements for negotiable instruments. We
turn to those UCC requirements applicable here. Under □ 4-3-
310(b)(3), an obligee may enforce either the note or the debt.
However, when the note is transferred to a third party (as in the
present case) the only right that survives is the right to enforce
the note. □ 4-3-310(b)(4). Also important here is Code provision
□ 4-3-301, which provides that a person may be able to enforce the
note even though that person is not the owner of the instrument or
is in wrongful possession of the note.

In applying the foregoing Code requirements to the facts
before us, the McKay note and mortgage were purportedly
transferred ultimately to Capital Resources, a third party. And
while Capital Resources introduced into evidence the Garland County
Circuit Court Clerk's certification that the mortgage and the
assignments were true copies of the originals, Capital Resources
submitted only a photocopy of the promissory note. The McKays
maintain that the record is void of any evidence that either
Magnolia Federal or Capital Resources were ever holders of the
original note, and that being so, the McKays are left with the
possibility of the actual holder enforcing the note against them
later.

At this point, we underscore that Capital Resources, even
without possessing the original note, could have under certain
circumstances prevailed in this action against the McKays. For
example, under □ 4-3-301, a person not in possession of a note may
be entitled to enforce the instrument pursuant to □ 4-3-309. Under
□ 4-3-309, a lost, destroyed, or stolen instrument may be enforced,
if the following is shown:

(a) A person not in possession of an instrument is
entitled to enforce the instrument if (i) the person was
in possession of the instrument and entitled to enforce
it when loss of possession occurred, (ii) the loss of
possession was not the result of a transfer by the person

or a lawful seizure, and (iii) the person cannot
reasonably obtain possession of the instrument because
the instrument was destroyed, its whereabouts cannot be
determined, or it is in the wrongful possession of an
unknown person or a person that cannot be found or is not
amenable to service of process.

    (b)  A person seeking enforcement of an instrument
under subsection (a) must prove the terms of the
instrument and the person's right to enforce the
instrument.  If that proof is made, ⬚ 4-3-308 applies to
the case as if the person seeking enforcement had
produced the instrument.  The court may not enter
judgment in favor of the person seeking enforcement
unless it finds that the person required to pay the
instrument is adequately protected against loss that
might occur by reason of a claim by another person to
enforce the instrument.  Adequate protection may be
provided by any reasonable means.

    In the instant case, Capital Resources apparently never
possessed McKays' original note as provided in ⬚ 4-3-309(a)(i).
But even if it had, Capital Resources was required to have proven
all three factors specified in ⬚ 4-3-309(a).  Consequently, Capital
Resources could not enforce the original note's terms by the use of
a copy.  Even if all three requirements in ⬚ 4-3-309(a) had been
proven, the trial court was still obligated to ensure that Capital
Resources provided adequate protection to the McKays from any
future claim, and this too was not done.  See Resolution Trust
Corp. v. Love, 36 F.3d 972 (10th Cir. 1994) (RTC agreed to
indemnify the debtor against further liability on the lost note).

    Capital Resources also urges that the trial court was correct
in admitting the copy of the note as an exception under the best
evidence rule.  Ark. R. Evid. 1002 provides that the original is
required to prove the contents of a document.  However, under Rule
1003, a duplicate is admissible to the same extent as an original,
unless a question of its authenticity is raised or it would be
unfair to admit the duplicate in lieu of the original.  Capital
Resources contends the Rules of Evidence supersede the requirements
of the UCC.  But we find this argument without merit.

    First, as previously discussed, we mention the unfairness in
these circumstances that, if a duplicate was allowed in place of
the original note, the McKays could later be subjected to double
liability if the actual holder of the note appeared.  Next, we add
that the Rules of Evidence are rules of the court involving legal
proceedings, while the UCC is composed of statutes of law that
established the rights and liabilities of persons.  Again, as
previously discussed, Capital Resources, as an assignee of the

McKays' note, could not sue on the underlying debt the McKays owed
to Landmark Savings.  For Capital Resources to have prevailed in
enforcing the McKays' note, it was required either to produce the
original or satisfy the requirements for a lost negotiable
instrument under □ 4-3-309(a) and (b).  Because Capital failed to
do either, we must reverse and remand.

    Corbin and Brown, JJ., not participating.  Special Justices
Michael D. Huckabay and Paul B. Gean join this opinion.□

376 F.2d 818

J. Vincent O'NEILL, Appellant,

v.

CORPORATE TRUSTEES, INC., Appellee.

*No. 23898.*

**United States Court of Appeals Fifth
Circuit.**

*April 25, 1967.*

John H. Wahl, Jr., Laurence A. Schroeder, Miami, Fla.,
Walton Lantaff Schoreder Carson & Wahl, Miami, Fla., of
counsel for appellant.

Harold L. Ward, Miami, Fla., Fowler, White, Collins,
Gillen, Humkey & Trenam, Miami, Fla., of counsel for
appellee.

Before COLEMAN and DYER, Circuit Judges, and
ESTES, District Judge.

ESTES, District Judge:

Appellant, J. Vincent O'Neill, appeals from the entry of a
summary judgment in favor of the appellee, Corporate
Trustees, Inc., on a suit brought by appellant, O'Neill, for
breach of contract for purchase of appellant's stock in the
Boulevard National Bank of Miami, Florida (Boulevard
Bank).

The pleadings, affidavits and depositions show the
following undisputed facts:

Appellant, O'Neill, was president of the Boulevard Bank,
and prior to August 2, 1965, he owned 36 shares of stock in
the Boulevard Bank; and he had a stock-option agreement
with the directors of the Boulevard Bank running from
May 22, 1961, to May 22, 1966, granting him the option to
purchase 1,000 shares of such stock at $50 a share and an
additional 1,000 shares at $70 a share.

On June 23, 1965, James B. Allen, Jack L. Ray, Kenneth J. Fowler, and Doc Fowlkes (Allen, et al), predecessors-in-interest of appellee, Corporate Trustees, Inc., agreed to purchase a majority of the outstanding shares of Boulevard Bank from the Mackle Company, Inc., Sidney Alterman, and Michael O. O'Neill (Sellers), who were the record owners of such majority stock. This agreement provided in part that:

'(Allen, et al) will make an offer to purchase the outstanding shares of stock of Boulevard (Bank) from the owners or holders thereof * * * for a* * * price of $85.00 per share; and (Allen, et al) will transmit to each stockholder of record * * * a tender and/or offer to purchase, which shall be in the form Exhibit 'I', attached hereto. * * *'

The material parts of the aforesaid Exhibit 'I' read:

'August 2, 1965

'TO THE STOCKHOLDERS OF BOULEVARD NATIONAL BANK OF MIAMI (Who held and were the record owners of stock as of the close of business on June (23) 1965): '(Allen, et al), (Offerors), hereby offer to purchase all or part of the $30.00 par value common stock of Boulevard National Bank of Miami at a net cash price of $85.00 per share.'

On August 2, 1965, appellant, O'Neill, received an offer in the form of Exhibit 'I,' set forth above, except that 'Corporate Trustees, Inc., an Alabama corporation, (offeror)' was used in place of the names of the individual offerors, Allen, et al. On September 1, 1965, O'Neill exercised his option to purchase the 2,000 option shares at an average price of $60 per share, and he then made demand on Corporate Trustees, Inc., for its purchase of the stock of $85 a share. Corporate Trustees, Inc. declined to purchase the shares appellant acquired under the stock option, denying any obligation of appellee to purchase appellant's option stock which he did not own of record on June 23, 1965.

Both appellant and appellee filed motions for summary judgment on April 8, 1966. On April 27, 1966, the court granted a Final Summary Judgment in favor of appellee, Corporate Trustees, Inc., and against appellant J. Vincent O'Neill, briefly reciting the facts and stating that there is no ambiguity in the offer dated August 2, 1965, and such offer did not include appellant's option stock. The court reasoned, however, that if the offer could be construed as

being ambiguous, then the appellant at all times knew the offer was not intended to include his option stock.

Appellant contends that there is a ginuine issue of material fact as to appellee's intent in making its offer of August 2, 1965, and appellant's knowledge of that intent. We do not agree.

In Florida, it is well settled that:

'In order that there be a contract, the praties must have a definite and distinct intention, common to both, and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms.' Webster Lumber Co. v. Lincoln (1927) 94 Fla. 1097, 115 So. 498, 502. Accord: Enid Corp. v. Mills (Fal., 1958), 101 So.2d 906; Minsky's Follies of Lorida v. Sennes (5 Cir., 1953), 206 F.2d 1; Truly Nolen, Inc. v. Atlas Moving & Storage Ware., Inc. (Fla., 1961), 125 So.2d 903; Fincher v. Belk-Sawyer Co. (Fla., 1961), 127 So.2d 130.

It is undisputed that appellant, O'Neill, first saw the June 23, 1965, agreement on July 17, 1965. After seeing the agreement, O'Neill discussed the matter with seller Sidney Alterman. Alterman wrote a letter dated July 17, 1965, to seller Michael O'Neil, indicating the nature of his conversation with appellant, J. Vincent O'Neill. Portions of the letter are as follows:

'* * * My opinion is that we have a serious problem with Vince (appellant, J. Vincent O'Neill) and it was indicated to * * * me that he feels that he should be paid $50,000.00 for his stock option agreement with the nine (9) directors. * * * He further feels that the (June 23, 1965) contract has no right to the stipulation calling for purchase by (Allen, et al) from 'stockholders of record, June * * *, 1965.' (Appellant, O'Neill) has indicated * * * to me that he may seek injunctive action.'

On deposition, appellant, O'Neill, testified that the letter set forth above was accurate and correct; that he considered the agreement of June 23, 1965, which 'ignored the stock option agreement' to be an 'outrage,' and for that matter, still considered it an 'outrage'; that before August 2, 1965, he asked the attorney who drafted the agreement of June 23, 1965, whether such agreement was to include appellant's option to buy stock; and that the attorney advised appellant that the option stock was not judgment as a matter of law. Rule 56(c)

The record establishes without genuine dispute that appellant understood the agreement of June 23, 1965, did not cover his option stock. Hence, when the offer of August 2, 1965, was made pursuant to the agreement of June 23, 1965, there was no assent by the parties to any agreement between them for the purchase and sale of appellant's 2,000 shares of option stock.

Appellant's contention that the trial court committed reversible error by the inclusion and subsequent deletion of language referring to appellant, J. Vincent O'Neill, rather than Michael O'Neil, as a Seller under the June 23rd agreement is not material and is without merit.

There is no genuine issue as to any material fact, and appellee is entitled to judgmentas a matter of law. Rule 56(c) F.R.Civ.P.

The trial court's judgment is

Affirmed.

Michael O. O'Neil is no relation to appellant, J. Vincent O'Neill

CC☐ | Transformed by Public.Resource.Org