UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAY 12 2008  NF
May 12 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FLOYD SHEPHERD,           )
      Plaintiff,         )
                          )
v.                        )    Case No. 08-cv-622
                          )
HOMECOMINGS FINANCIAL (GMAC))  Judge Gottschall
      Defendants.        )   Magistrate Judge Brown

PLAINTIFFS THIRD JUDICIAL NOTICE
5 ILCS 50 AND 735 ILCS 105/5-5

Plaintiff filed his first judicial notice on May 8th, 2008.
Plaintiff's second judicial notice filed on May 9th, 2008

## SUPREME COURT CASES

Chase Manhatten Mortgage Corporation v. Lynne E. Goodrich and Leana M. Goodrich

John P. McCay, Jr. and Rosemary L. McCay v. Capital Resources Company, LTD

J. Vincent O'Neill, Appellant, v. Corporate Trustee, Inc., Appelle. 376 F. 2d 818 No. 23898

According to first two Supreme Court cases a mortgage company cannot foreclose unless the original note is produced. Both court cases are fully attached. A copy of these cases will be sent to the Sheriff Office, 50 West Washington, Chicago, Illinois 60602 by certified mail. Certified mail #7007-2560-0000-9077-3108.

According to J. Vincent O'Neill v. Corporate Trustee, Inc. In order to be a contract, the partjes must have a definite and distinct intention, common to both and without doubt or difference. This case is fully attached and sent to the sheriff's office.

## TITLE 12 CFR SECTION 226.13

Under the law Title 12 CFR Section 226.13, a consumer has the right to withhold payment until the dispute is resolved and the creditor is prohibited from all collection efforts, as well as adding late charges and fees if the account is still in dispute. Continued action to attempt to collect payment on a disputed account is in violation of Federal law Title 12 Code of Federal Regulations (CFR) Banks and Banking section (sect.) 226.13 (d)(1), which specifically states...

1

Consumers right to withhold disputed amount; collection action prohibited. The consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges.)"

### Certificate of Service

I certify that a copy of the foregoing was sent regular mail and emailed to Douglas R. Sargent, of Lock, Lord Bissell and Liddell, LLP, 111 South Wacker Drive, Chicago Illinois 60606. On this 12th, day of May 2008.

Floyd Shepherd,<br>
8119 S. Artesian St.<br>
Chicago, Illinois 60652<br>
773-590-1873

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=ia&vol=app%5C20040909%5C02-1889&invol=1

FindLaw> State Resources> Iowa> Primary Materials> Iowa Court Opinions

**IN THE COURT OF APPEALS OF IOWA**

No. 4-561 / 02-1889

Filed September 9, 2004

CHASE MANHATTEN MORTGAGE CORPORATION,

    Plaintiff-Appellee,

vs.

**LYNN E. GOODRICH and LEANA M. GOODRICH,**

    Defendants-Appellants,

**HOME FEDERAL SAVINGS BANK, U.S. BANK, NATIONAL ASSOCIATION, and GENERAL SERVICE BUREAU, INC.,**

    Defendants.

    Appeal from the Iowa District Court for Harrison County, Gordon C. Abel, Judge.

    Lynn E. Goodrich and Leana M. Goodrich appeal from the adverse ruling

by the district court. **AFFIRMED**.

Lynn Goodrich, Woodbine, for appellant pro se.

Mark Walz, Des Moines, for appellee.

Considered by Huitink, P.J., and Hecht and Eisenhauer, JJ.

HECHT, J.

Lynn E. Goodrich and Leana M. Goodrich appeal from an adverse ruling on their petition to vacate a judgment in a mortgage foreclosure action. We affirm.

I.      **Factual Background and Proceedings.**

Chase Manhattan Mortgage Corporation (Chase) brought an action against the Goodriches to foreclose a mortgage executed on December 29, 1995. The district court granted Chase's motion for summary judgment on August 13, 2001, after the Goodriches withdrew their resistance in consideration for Chase's agreement to delay the foreclosure sale until six months after entry of a foreclosure decree.

On March 11, 2002, Chase filed an affidavit affirming that the original of the promissory note secured by the mortgage in question had been lost. On March 18, 2002, the district court filed a decree of foreclosure expressly authorizing the document to be filed notwithstanding Chase's failure to file the original note for cancellation.

On April 4, 2002, the Goodriches filed a "Motion to Set Aside Foreclosure & Decree and Motion for New Trial." These motions sought relief from the judgment of foreclosure on the ground that Chase's failure to produce the original of the promissory note was newly discovered evidence justifying a new trial. After the district court authorized their counsel to withdraw on July 1, 2002, the Goodriches filed their pro se "Motion to Vacate A Void Judgment and Dismiss" asserting that the judgment of foreclosure should be vacated because (1) the district court lacked subject matter jurisdiction, (2) the judgment was obtained through a violation of the Fair Debt Collection Practices Act and deprivation of their due process rights, (3) the original promissory note was not filed by Chase, and (4) their constitutional right to competent legal counsel was infringed. Chase resisted the motions and requested sanctions against the Goodriches on the ground that the motions were frivolous. The district court overruled the motions, found they were not based on existing law or the good faith extension of existing law and ordered the Goodriches to pay $150 for Chase's attorney fees.

On appeal, the Goodriches contend the judgment against them should be vacated because (1) the record was insufficient to support the summary judgment against them, (2) their due process rights were infringed because Chase "produced no competent witness for cross examination", (3) Chase's Lost Note Affidavit lacked credibility, (4) they have not had an opportunity to examine for authenticity the newly discovered original note that was found after judgment was entered, and (5) the "Truth in Lending Act" was violated.

## II.  Scope and Standards of Review.

We review summary judgment rulings for errors of law. *Grovihohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002). We similarly review rulings on motions to vacate judgments for errors of law. *In re Marriage of Kinnard*, 512 N.W.2d 821, 823 (Iowa Ct. App. 1993). The district court enjoys considerable discretion in determining whether to vacate a judgment. *Id.*

## III.  Discussion.

Several of the separate contentions articulated by the Goodriches posit that the summary judgment record was insufficient to support the summary judgment and decree of foreclosure. Central to these contentions is the mistaken notion that a judgment of foreclosure could not be entered because Chase failed to produce the original of the promissory note. Iowa Rule of Civil Procedure 1.961 contemplates that judgment on a note may be entered without production of the original note if the court so orders. The district court did by order authorize the foreclosure despite Chase's failure to produce the original note. Thus, we conclude the summary judgment record was not insufficient to support the judgment of foreclosure despite Chase's failure to produce the original of the note. Our resolution of this issue is strongly influenced by the fact that the Goodriches make no contention that either Chase's Lost Note Affidavit or the foreclosure decree misstated any term of the promissory note.

The Goodriches further contend the original promissory note found after entry of the judgment of foreclosure constitutes newly discovered evidence which they have not had an opportunity to inspect for authenticity. The court record discloses the note was filed by Chase and thereby made available for inspection after the judgment was entered. We find it significant that the Goodriches acknowledge they have not availed themselves of the opportunity to examine the document even after it was made part of the court file in this case. As noted above, they make no argument that the terms stated in the original note differ from the terms of the contract found by the district court. Accordingly, even if the original note could be viewed as newly discovered evidence, the district court did not

abuse its discretion in determining that such evidence did not justify vacation of the judgment against the Goodriches.

The due process claim asserted by the Goodriches is also without merit. When they withdrew their resistance to the motion for summary judgment, they waived any claims that the nature and quality of the evidence produced by Chase failed to adequately support the judgment against them. Included among the claims thus waived is the claim that the Goodriches were entitled to cross-examine a witness called by Chase to testify.

We have reviewed all other arguments and claims raised on appeal by the Goodriches and find they were waived or without merit.

**AFFIRMED.**

John P. McCAY, Jr. and Rosemary L. McCay v.
CAPITAL RESOURCES COMPANY, LTD.

96-200 ___ S.W.2d ___

Supreme Court of Arkansas
Opinion delivered March 24, 1997

1. Mortgages -- original note's terms could not be enforced by use of copy without proving it lost, destroyed, or stolen as required in code -- adequate protection to appellants from future claim not given. -- Where appellee apparently never possessed appellants' original note as provided in Ark. Code Ann. □ 4-3-309(a)(i) (Repl. 1991), but was required, even if it had, to have proven all three factors specified in □ 4-3-309(a) and did not do so, appellee could not enforce the original note's terms by the use of a copy; even if all three requirements in □ 4-3-309(a) had been proven, the trial court was still obligated to ensure that appellee provided adequate protection to the appellants from any future claim, and this, too, was not done.

2. Evidence -- argument that rules of evidence supersede requirements of UCC without merit -- appellee failed to either produce original of note or satisfy requirements for lost negotiable instrument. -- Appellee's argument that the trial court was correct in admitting the copy of the note as an exception under the best evidence rule and that the Arkansas Rules of Evidence superseded the requirements of the Uniform Commercial Code (UCC) was without merit; if a duplicate was allowed in place of the original note, the appellants could later be subjected to double liability if the actual holder of the note appeared; the rules of evidence are rules of the court involving legal proceedings, while the UCC is composed of statutes of law that established the rights and liabilities of persons; appellee, as an assignee of the appellants' note, could not sue on the underlying debt the appellants owed to the original lender; in order for appellee to have prevailed in enforcing the note, it was required either to produce the original or satisfy the requirements for a lost negotiable instrument under □ 4-3-309(a) and (b); because appellee failed to do either, the case was reversed and remanded.

Appeal from Garland Chancery Court; David B. Switzer,

Chancellor; reversed and remanded.

Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd., by: John E. Pruniski and Dorcy Kyle Corbin, and The Harmon Law Firm, P.A., by: John T. Harmon, for appellants.

Tom Glaze, Justice.

In 1987, appellants John and Rosemary McKay, Jr., purchased a condominium unit in Hot Springs. They financed the purchase through Landmark Savings Bank, F.S.B., by a promissory note secured by a mortgage on the unit. In 1990, Landmark Savings was placed into receivership with the Resolution Trust Corporation (RTC), and in 1993, the RTC assigned the McKay note and mortgage to Magnolia Federal Bank for Savings of Hattiesburg, Mississippi.

Subsequently, the McKays defaulted on the note, and on April 12, 1994, Magnolia Federal filed a complaint to foreclose on the McKay mortgage, but during the pendency of that foreclosure suit, on June 29, 1995, Magnolia Federal assigned the McKay note and mortgage to appellee Capital Resources Company, Ltd. Capital Resources in turn filed a petition requesting it be substituted for Magnolia Federal as party-plaintiff in the foreclosure action. An order granting Capital Resources' motion was entered on September 25, 1995.

At the conclusion of the trial held on September 27, 1995, the McKays moved to dismiss the foreclosure action because Capital Resources failed to produce the original promissory note or account for the note's absence. The chancellor denied McKay's motion, and on October 19, he entered a foreclosure decree in Capital Resources' favor, awarding a judgment against the McKays in the amount of $117,387.06. The McKays appeal from the forclosure decree and denial of their motion to dismiss.

The McKays challenge the trial court's ruling that Capital Resources was not required to produce the original promissory note at trial, but instead could prove its case by introducing only a copy of the note. As argued below, they contend that under the Uniform Commercial Code, Capital Resources was required either to produce the original note or to explain its absence. The McKays maintain that without production of the original note, Capital Resources cannot prove its status as a holder entitled to sue on the note. They further submit that Capital Resources' failure to produce the original note subjects them to double liability should a subsequent holder of the original note appear.

The McKays point out that Arkansas case law dating as far back as 1842 has required a creditor to prove the debt by admitting the original promissory note into evidence. See Beebe v. Real Estate Bank, 4 Ark. (1842) (profert of a promissory note is required by statutes placing promissory notes on the same footing and of equal

dignity with instruments under seal). Furthermore, they cite *Vandergriff v. Vandergriff*, 211 Ark. 848, 202 S.W.2d 967 (1947), where this court held there can be no judgment on a note when it is not introduced into evidence and where the note's absence is not explained. This court has also held that secondary evidence of the contents of a note is inadmissible when the original is within the control or custody of the one seeking to enforce it. *Chaviers v. Simmons*, 256 Ark. 731, 510 S.W.2d 301 (1974).

Article 3 of the UCC, first enacted in 1961 and replaced in 1991, governs the treatment of negotiable instruments. Ark. Code Ann. §§ 4-3-101--605 (Repl. 1991). Here, because their promissory note is a negotiable instrument as defined by § 4-3-104(a), the McKays contend, and we agree, that Capital Resources was obligated to satisfy the UCC requirements for negotiable instruments. We turn to those UCC requirements applicable here. Under § 4-3-310(b)(3), an obligee may enforce either the note or the debt. However, when the note is transferred to a third party (as in the present case) the only right that survives is the right to enforce the note. § 4-3-310(b)(4). Also important here is Code provision § 4-3-301, which provides that a person may be able to enforce the note even though that person is not the owner of the instrument or is in wrongful possession of the note.

In applying the foregoing Code requirements to the facts before us, the McKay note and mortgage were purportedly transferred ultimately to Capital Resources, a third party. And while Capital Resources introduced into evidence the Garland County Circuit Court Clerk's certification that the mortgage and the assignments were true copies of the originals, Capital Resources submitted only a photocopy of the promissory note. The McKays maintain that the record is void of any evidence that either Magnolia Federal or Capital Resources were ever holders of the original note, and that being so, the McKays are left with the possibility of the actual holder enforcing the note against them later.

At this point, we underscore that Capital Resources, even without possessing the original note, could have under certain circumstances prevailed in this action against the McKays. For example, under § 4-3-301, a person not in possession of a note may be entitled to enforce the instrument pursuant to § 4-3-309. Under § 4-3-309, a lost, destroyed, or stolen instrument may be enforced, if the following is shown:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person

or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

 (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, □ 4-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

 In the instant case, Capital Resources apparently never possessed McKays' original note as provided in □ 4-3-309(a)(i). But even if it had, Capital Resources was required to have proven all three factors specified in □ 4-3-309(a). Consequently, Capital Resources could not enforce the original note's terms by the use of a copy. Even if all three requirements in □ 4-3-309(a) had been proven, the trial court was still obligated to ensure that Capital Resources provided adequate protection to the McKays from any future claim, and this too was not done. See Resolution Trust Corp. v. Love, 36 F.3d 972 (10th Cir. 1994) (RTC agreed to indemnify the debtor against further liability on the lost note).

 Capital Resources also urges that the trial court was correct in admitting the copy of the note as an exception under the best evidence rule. Ark. R. Evid. 1002 provides that the original is required to prove the contents of a document. However, under Rule 1003, a duplicate is admissible to the same extent as an original, unless a question of its authenticity is raised or it would be unfair to admit the duplicate in lieu of the original. Capital Resources contends the Rules of Evidence supersede the requirements of the UCC. But we find this argument without merit.

 First, as previously discussed, we mention the unfairness in these circumstances that, if a duplicate was allowed in place of the original note, the McKays could later be subjected to double liability if the actual holder of the note appeared. Next, we add that the Rules of Evidence are rules of the court involving legal proceedings, while the UCC is composed of statutes of law that established the rights and liabilities of persons. Again, as previously discussed, Capital Resources, as an assignee of the

McKays' note, could not sue on the underlying debt the McKays owed to Landmark Savings. For Capital Resources to have prevailed in enforcing the McKays' note, it was required either to produce the original or satisfy the requirements for a lost negotiable instrument under § 4-3-309(a) and (b). Because Capital failed to do either, we must reverse and remand.

 Corbin and Brown, JJ., not participating. Special Justices Michael D. Huckabay and Paul B. Gean join this opinion.

376 F.2d 818

J. Vincent O'NEILL, Appellant,

v.

CORPORATE TRUSTEES, INC., Appellee.

No. 23898.

**United States Court of Appeals Fifth Circuit.**

*April 25, 1967.*

John H. Wahl, Jr., Laurence A. Schroeder, Miami, Fla., Walton Lantaff Schoreder Carson & Wahl, Miami, Fla., of counsel for appellant.

Harold L. Ward, Miami, Fla., Fowler, White, Collins, Gillen, Humkey & Trenam, Miami, Fla., of counsel for appellee.

Before COLEMAN and DYER, Circuit Judges, and ESTES, District Judge.

ESTES, District Judge:

Appellant, J. Vincent O'Neill, appeals from the entry of a summary judgment in favor of the appellee, Corporate Trustees, Inc., on a suit brought by appellant, O'Neill, for breach of contract for purchase of appellant's stock in the Boulevard National Bank of Miami, Florida (Boulevard Bank).

The pleadings, affidavits and depositions show the following undisputed facts:

Appellant, O'Neill, was president of the Boulevard Bank, and prior to August 2, 1965, he owned 36 shares of stock in the Boulevard Bank; and he had a stock-option agreement with the directors of the Boulevard Bank running from May 22, 1961, to May 22, 1966, granting him the option to purchase 1,000 shares of such stock at $50 a share and an additional 1,000 shares at $70 a share.

On June 23, 1965, James B. Allen, Jack L. Ray, Kenneth J. Fowler, and Doc Fowlkes (Allen, et al), predecessors-in-interest of appellee, Corporate Trustees, Inc., agreed to purchase a majority of the outstanding shares of Boulevard Bank from the Mackle Company, Inc., Sidney Alterman, and Michael O. O'Neill (Sellers), who were the record owners of such majority stock. This agreement provided in part that:

'(Allen, et al) will make an offer to purchase the outstanding shares of stock of Boulevard (Bank) from the owners or holders thereof * * * for a* * * price of $85.00 per share; and (Allen, et al) will transmit to each stockholder of record * * * a tender and/or offer to purchase, which shall be in the form Exhibit 'I', attached hereto. * * *'

The material parts of the aforesaid Exhibit 'I' read:

'August 2, 1965

'TO THE STOCKHOLDERS OF BOULEVARD NATIONAL BANK OF MIAMI (Who held and were the record owners of stock as of the close of business on June (23) 1965): '(Allen, et al), (Offerors), hereby offer to purchase all or part of the $30.00 par value common stock of Boulevard National Bank of Miami at a net cash price of $85.00 per share.'

On August 2, 1965, appellant, O'Neill, received an offer in the form of Exhibit 'I,' set forth above, except that 'Corporate Trustees, Inc., an Alabama corporation, (offeror)' was used in place of the names of the individual offerors, Allen, et al. On September 1, 1965, O'Neill exercised his option to purchase the 2,000 option shares at an average price of $60 per share, and he then made demand on Corporate Trustees, Inc., for its purchase of the stock of $85 a share. Corporate Trustees, Inc. declined to purchase the shares appellant acquired under the stock option, denying any obligation of appellee to purchase appellant's option stock which he did not own of record on June 23, 1965.

Both appellant and appellee filed motions for summary judgment on April 8, 1966. On April 27, 1966, the court granted a Final Summary Judgment in favor of appellee, Corporate Trustees, Inc., and against appellant J. Vincent O'Neill, briefly reciting the facts and stating that there is no ambiguity in the offer dated August 2, 1965, and such offer did not include appellant's option stock. The court reasoned, however, that if the offer could be construed as

being ambiguous, then the appellant at all times knew the offer was not intended to include his option stock.

Appellant contends that there is a ginuine issue of material fact as to appellee's intent in making its offer of August 2, 1965, and appellant's knowledge of that intent. We do not agree.

In Florida, it is well settled that:

'In order that there be a contract, the praties must have a definite and distinct intention, common to both, and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms.' Webster Lumber Co. v. Lincoln (1927) 94 Fla. 1097, 115 So. 498, 502. Accord: Enid Corp. v. Mills (Fal., 1958), 101 So.2d 906; Minsky's Follies of Lorida v. Sennes (5 Cir., 1953), 206 F.2d 1; Truly Nolen, Inc. v. Atlas Moving & Storage Ware., Inc. (Fla., 1961), 125 So.2d 903; Fincher v. Belk-Sawyer Co. (Fla., 1961), 127 So.2d 130.

It is undisputed that appellant, O'Neill, first saw the June 23, 1965, agreement on July 17, 1965. After seeing the agreement, O'Neill discussed the matter with seller Sidney Alterman. Alterman wrote a letter dated July 17, 1965, to seller Michael O'Neil, indicating the nature of his conversation with appellant, J. Vincent O'Neill. Portions of the letter are as follows:

'* * * My opinion is that we have a serious problem with Vince (appellant, J. Vincent O'Neill) and it was indicated to * * * me that he feels that he should be paid $50,000.00 for his stock option agreement with the nine (9) directors. * * * He further feels that the (June 23, 1965) contract has no right to the stipulation calling for purchase by (Allen, et al) from 'stockholders of record, June * * *, 1965.' (Appellant, O'Neill) has indicated * * * to me that he may seek injunctive action.'

On deposition, appellant, O'Neill, testified that the letter set forth above was accurate and correct; that he considered the agreement of June 23, 1965, which 'ignored the stock option agreement' to be an 'outrage,' and for that matter, still considered it an 'outrage'; that before August 2, 1965, he asked the attorney who drafted the agreement of June 23, 1965, whether such agreement was to include appellant's option to buy stock; and that the attorney advised appellant that the option stock was not judgment as a matter of law. Rule 56(c)

The record establishes without genuine dispute that appellant understood the agreement of June 23, 1965, did not cover his option stock. Hence, when the offer of August 2, 1965, was made pursuant to the agreement of June 23, 1965, there was no assent by the parties to any agreement between them for the purchase and sale of appellant's 2,000 shares of option stock.

Appellant's contention that the trial court committed reversible error by the inclusion and subsequent deletion of language referring to appellant, J. Vincent O'Neill, rather than Michael O'Neil, as a Seller under the June 23rd agreement is not material and is without merit.

1

There is no genuine issue as to any material fact, and appellee is entitled to judgment as a matter of law. Rule 56(c) F.R.Civ.P.

The trial court's judgment is

2

Affirmed.

---

1

Michael O. O'Neil is no relation to appellant, J. Vincent O'Neill

CC☐ | Transformed by Public.Resource.Org